Robert M.T. WILSON, Appellant,

v.

Thomas TURNAGE, Acting Director, Selective Service System.

No. 83–2323.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 1984.

Decided Dec. 28, 1984.

---

George M. Chuzi, Washington, D.C., with whom June D.W. Kalijarvi, Washington, D.C., was on the brief, for appellant.

Judith Bartnoff, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TAMM and EDWARDS, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Appellant Robert M.T. Wilson challenges the district court's denial of attorney's fees under the Back Pay Act, 5 U.S.C. § 5596 (1982). In a memorandum opinion and order issued October 26, 1983, the district court held that the Savings Clause of the Civil Service Reform Act of 1978 (Reform Act) precluded an award of fees. Although the Reform Act amended the Back Pay Act to provide for awards of attorney's fees in cases of unjustified personnel actions taken against federal employees, the Savings Clause makes the new law inapplicable to "administrative proceedings" pending as of January 11, 1979. Wilson contends that the district court erred in its finding that a November 28, 1978 letter from appellee Selective Service System directing him to undergo a psychiatric examination and placing him on sick leave status pending the results constituted an "administrative proceeding" for purposes of the Savings Clause. Because we find that the November 28 directive constituted a "personnel action" and not an "administrative proceeding," we reverse the decision of the district court and remand for a determination of the amount of attorney's fees owed appellant pursuant to 5 U.S.C. § 5596(b)(1)(A)(ii).

## I. Background

Appellant Robert M.T. Wilson worked for the Selective Service System as an Op-

erations Evaluation Specialist responsible for analyzing the agency's ability to mobilize in the event of a national emergency. In the course of his work, Wilson became concerned that his agency was unable to meet the statutory preparedness requirements prescribed by section 10(h) of the Military Selective Service Act, 50 U.S.C. App. § 460(h) (1982). After his superiors ignored his attempts to bring this problem to their attention, Wilson in November 1978 delivered to the White House Secret Service detail a letter and supporting documents criticizing the agency's lack of military preparedness. Wilson requested that the materials be given to President Carter, but the Secret Service instead returned the letter and documents to the Selective Service.

On November 28, 1978, the Selective Service sent Wilson a letter directing him to submit to a psychiatric fitness-for-duty examination and placing him on sick leave status pending receipt of the psychiatric report.[1] The letter stated that the agency was requiring the examination "based upon a study of your recent communications addressed to the President." Joint Appendix (J.A.) at 32.

In February 1979, Wilson filed an administrative appeal with the Merit Systems Protection Board (the Board or MSPB). The Board, however, held that it had no jurisdiction to hear the appeal because Wilson's leave was not a suspension or action imposed for disciplinary reasons.

On April 4, 1979, Wilson sued the Selective Service in the district court alleging a violation of his First Amendment rights and seeking a temporary restraining order, injunctive relief, and restoration to his former position with full benefits. Following a series of actions in both the district court and this court,[2] as well as an investigation by the Office of Special Counsel,[3] the parties settled the dispute in December 1979. The settlement reinstated Wilson with back pay and full benefits but reserved the issue of his entitlement to attorney's fees.

On June 23, 1981, Wilson filed a motion with the district court for attorney's fees and costs under the Back Pay Act. Following a report and recommendation by a magistrate, the district court denied Wilson's request and held that, because an administrative proceeding was pending as of the November 28, 1978 letter, an award of attorney's fees under the Back Pay Act was barred by application of the Savings Clause. J.A. at 6. Wilson appeals, arguing that "administrative proceeding" must be distinguished from "personnel action" as those terms are used in the Reform Act. Wilson contends that because the November 28 letter constituted a personnel action and no judicial or administrative actions were instituted prior to January 11, 1979 the Savings Clause does not apply to bar an award of fees.

## II. Discussion

The primary issue in this appeal is whether the November 1978 letter from the Selective Service System directing Wilson to undergo psychiatric evaluation and placing him on leave was an "administrative proceeding" for purposes of the Savings

---

1. Wilson's leave was exhausted on May 31, 1979, at which time the agency placed him on leave without pay. He was restored to duty on December 10, 1979.

2. The district court granted the temporary restraining order on April 5 and vacated it on April 11, 1979. Wilson reapplied on April 19, but the district court denied the application and Wilson appealed. A panel of this court granted a temporary order restraining the agency from disturbing the status quo on April 25, 1979. That order was lifted on May 25, 1979, and the appeal remained pending until it was withdrawn as part of the December 1979 settlement agreement. Brief for Appellant at 8.

3. On February 27, 1979, Wilson filed a complaint with the Office of Special Counsel of the Merit Systems Protection Board. The Office of Special Counsel was created by the Civil Service Reform Act in 1978 to investigate prohibited personnel practices. The Special Counsel issued a report on October 23, 1979 concluding that Selective Service had violated applicable law and regulations by the personnel actions taken against Wilson. Joint Appendix (J.A.) at 62, 66, 68.

Clause of the Civil Service Reform Act of 1978.

The Back Pay Act, 5 U.S.C. § 5596, is a waiver of the government's sovereign immunity for relief in cases of improper personnel actions taken against federal employees.[4] In 1978, as part of the Civil Service Reform Act, Congress amended the Back Pay Act to include awards of "reasonable attorney fees related to the personnel action." 5 U.S.C. § 5596(b)(1)(A)(ii) (1982).

The Reform Act became effective on January 11, 1979, but it included a Savings Clause which provides that

No Provision of this Act . . . shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act has not been enacted.

5 U.S.C. § 1101 note, 902(b) (1982). Thus, if "administrative proceedings" were pending in this case on or before January 11, 1979, the Savings Clause would bar an award of attorney's fees under the Back Pay Act even if Wilson were otherwise entitled to such an award.

Selective Service argues that an administrative proceeding existed in this case as of November 28, 1978—the date on which Wilson received notice that he was being placed on sick leave and required to take a psychiatric examination. The Service bases this argument on a regulation promulgated by the MSPB that interprets the Savings Clause. That regulation provides as follows:

No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing agency proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review or under

judicial review on January 11, 1979, the date on which the Act became effective. An agency proceeding is considered to exist once the employee has received notice of the proposed action.

5 C.F.R. § 1201.191(b) (1984). Selective Service argues that the MSPB regulation should govern the resolution of this case, observing that section 1201.191(b) "was specifically noted with approval" by this court in *Kyle v. ICC*, 609 F.2d 540, 542 (D.C.Cir.1980). The Service further asserts that the interpretation of the Savings Clause by the MSPB is entitled to deference because of the Board's special role in federal personnel administration. Brief for Appellee at 7.

■ Although the Board's interpretation of the Savings Clause "should be respected, in accordance with the judicial deference usually accorded to the interpretation made by the agency charged with a statute's administration," *Kyle*, 609 F.2d at 542, it cannot control a dispute that, unlike *Kyle*, is not on appeal from an administrative proceeding of the Board and which, by the Board's own determination, falls outside its jurisdiction. Selective Service cannot argue that a regulation adopted by an administrative body to govern its own proceedings should apply in matters that the body itself determines are not within its jurisdiction. The regulation itself is directed by its own terms exclusively to the Board, stating that no provision of the Reform Act "shall be applied *by the Board* in such a way as to affect any administrative proceeding." 5 C.F.R. § 1201.191(b) (1984) (emphasis added).

Moreover, this court on another occasion has stated expressly that *Kyle's* relevance to cases, like this one, that arise under the Back Pay Act is extremely limited. In *Crowley v. Shultz*, 704 F.2d 1269 (D.C.Cir. 1983), three State Department employees challenged that department's "overcomplement policy"[5] in a suit filed prior to the

---

**4.** 5 U.S.C. § 5596(b)(1) provides specified relief to "[a]n employee of an agency who, on the basis of a timely appeal or an administrative determination . . . is found by appropriate au-

thority . . . to have been affected by an unjustified or unwarranted personnel action."

**5.** "Under the overcomplement system, certain employees, while not terminated, were placed in

Reform Act's effective date. Following resolution of the merits of their claims, the district court awarded the employees attorney's fees under the amended Back Pay Act. The State Department appealed the award, arguing that the Savings Clause should have been interpreted to block any fee award. The question presented was whether the district court suit constituted an " 'administrative proceeding' or an appeal therefrom" such that the Savings Clause would apply to judicial proceedings brought pursuant to the Back Pay Act. *Id.* at 1272.

In its analysis, the court noted that the legislative history of the Reform Act treated together the Act's two attorney's fees provisions: 5 U.S.C. § 7701(g), which relates only to MSPB proceedings, and 5 U.S.C. § 5596(b)(1)(A)(ii), which permits awards of attorney's fees by courts and administrative agencies under the Back Pay Act. The court reasoned that "three classes of decisionmakers ... may be called upon to award attorneys' fees under the Reform Act's fee provisions: (1) the MSPB, ... (2) other agency adjudicators providing relief pursuant to the Back Pay Act, and ... (3) courts acting under the Back Pay Act." 704 F.2d at 1273. Because the Savings Clause clearly applied to the first two situations, the court saw no reason to treat the third any differently and held that the clause did apply to judicial proceedings brought pursuant to the Back Pay Act. Because the *Crowley* plaintiff filed suit before the Reform Act's effective date, application of the Savings Clause precluded an award of fees. In so holding, however, the court expressly found *Kyle* inapplicable to its resolution of the issues under the Back Pay Act:

> *Kyle* ... interpreted the Savings Clause, but did so in the context of normal appellate review of a Merit Systems Protection Board decision. *Kyle* did not involve the remedial authority of a district court under the Back Pay Act and is not sug-

gestive where the puzzle is the application of the Reform Act's Savings Clause to that part of the Reform Act that amends the Back Pay Act.

*Id.* at 1275.

That the Savings Clause applies to requests for fees under both section 7701(g) and section 5596(b)(1)(A)(ii), as *Crowley* held, does not mean that the Board's *regulations* must apply uniformly as well. Indeed, *Crowley* made clear that section 1201.191(b) did *not* apply to situations outside the Board's own proceedings. In rejecting the appellants' argument that this same regulation was "instructive" in the proper interpretation of the Savings Clause, this court in *Crowley* stated unequivocally that "[t]his provision [§ 1201.-191(b) ], by its terms, applies to administrative proceedings. Its reference to the Board and to notice strongly suggests that the regulation is not at all addressed to district court suits to which the Back Pay Act applies." 704 F.2d at 1275.

Because we find the Board's regulation inapplicable, our interpretation of the term "administrative proceedings" as used in the Savings Clause must be guided by the plain language of the statute. As the United States Supreme Court has frequently stated, the court's "starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). The legislative purpose " 'is expressed by the ordinary meaning of the words used.' Thus, '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citations omitted).

 The district court held that the Savings Clause was triggered by the November 28 letter because that letter was a "personnel action" initiated prior to Janu-

---

what the appellees described ... as 'limbo'; their positions were abolished and they were not selected for promotions or other forms of advancement.... No notice was given to em-

ployees placed in overcomplement status, nor were they afforded any opportunity to challenge their disfavored status." 704 F.2d at 1271.

ary 11, 1979. J.A. at 17. We believe the district court correctly labeled the letter but failed to distinguish between the terms "administrative proceedings" and "personnel action" as they are used in the Reform Act. Where different terms are used in a single piece of legislation, the court must presume that Congress intended the terms to have different meanings. *See National Insulation Transportation Committee v. ICC*, 683 F.2d 533, 537 (D.C.Cir.1982) ("the use of different terminology within a statute indicates that Congress intended to establish a different meaning"). *See also National Wildlife Federation v. Gorsuch*, 693 F.2d 156, 172 (D.C.Cir.1982) ("use of two different terms is presumed to be intentional").

Congress expressly defined the term "personnel action" in the Reform Act as (i) an appointment; (ii) a promotion; (iii) ... disciplinary or corrective action; (iv) a detail, transfer, or reassignment; (v) a reinstatement; (vi) a restoration; (vii) a reemployment; (viii) a performance evaluation ...; (ix) a decision concerning pay, benefits or awards ...; (x) any other significant change in duties or responsibilities.

5 U.S.C. § 2302(a)(2). In addition, Congress used the term throughout the Reform Act in a manner which demonstrates that, had Congress intended the Savings Clause to apply to all *personnel actions* initiated prior to January 11, 1979, it would have used that term rather than the term "administrative proceedings." The Back Pay Act, for example, provides remedies for "unjustified personnel actions," 5 U.S.C. § 5596(b)(1). The section governing the powers of the MSPB and the Office of Special Counsel provides that the Board in reviewing specified rules and regulations may declare any provisions thereof "invalidly implemented by any agency, if the Board determines that such provision, as ... implemented by the agency through any personnel action ... has required any employee to violate section 2302(b) of this title." 5 U.S.C. § 1205(e)(2)(B). In addition, 5 U.S.C. § 1208 empowers the Special Counsel to request a stay of any personnel action if the Special Counsel reasonably believes that the personnel action was or will be taken as a result of a prohibited personnel practice.

The manner in which the term is used thus suggests that Congress viewed personnel actions as events that may be the *subject* of an administrative proceeding, and the basis for a remedy obtained *through* such a proceeding, but not the equivalent. Moreover, 5 U.S.C. § 7701(a), governing appellate procedures of the MSPB, provides that "[a]n employee ... may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule or regulation." That provision demonstrates that a personnel action by itself will not automatically trigger administrative review or otherwise set the administrative machinery in motion. It merely provides a basis for an appeal at the discretion of the employee. If no challenge is mounted, then the entire matter is ended. No proceedings are "pending," nor do they even exist, because no further action would be necessary to provide a final resolution of the issue.

To allow a unilateral personnel action without more to trigger the Savings Clause would be to treat the clause as a statute of limitations, cutting off all claims arising from wrongful actions undertaken prior to the enactment of the Reform Act. The purpose of a Savings Clause, unlike a statute of limitations, however, is not to cut off stale claims. Rather, the Savings Clause is designed to avoid the disruption of ongoing deliberations that would be caused by a change in the applicable law. Wilson had filed no complaints with any administrative or judicial bodies, nor had he otherwise engaged any administrative machinery that would in any way be disrupted by the changes in the law caused by the January 11, 1979 effective date of the Reform Act. To construe the term "administrative proceedings" so broadly as to encompass the Selective Service's letter to Wilson would serve no policy advanced by the Savings Clause and would significantly thwart the

clear congressional intent to award attorney's fees to those who have been wronged by unwarranted personnel actions. Although we do not purport to define here the meaning of the term "administrative proceeding" for purposes of the Savings Clause in all cases and circumstances, we do find that in cases arising under the Back Pay Act and not appealable to the MSPB, something more is required than mere notice of a proposed personnel action.

Because we have concluded that the Savings Clause will not bar an award of fees to Wilson, we turn now to the question of his entitlement to them. The Service contends that Wilson is not entitled to fees even absent the Savings Clause because there was no finding in this case by an "appropriate authority" that Wilson had been the victim of an "unjustified or unwarranted personnel action" as required by the Back Pay Act. Brief for Appellee at 12.

■ We disagree. An employee who is the prevailing party may be awarded reasonable attorney's fees under the Back Pay Act if such an award is "warranted in the interest of justice." *Hoska v. United States Department of the Army,* 694 F.2d 270, 274 (D.C.Cir.1982). That standard was satisfied in *Hoska* where the Army's actions were "wholly unfounded and petitioner was substantially innocent of the accusations made against him." *Id.*

The magistrate's report and recommendation to the district court concluded that the relief obtained by Wilson pursuant to the settlement agreement established him as a "prevailing party." J.A. at 22 n. 3. In addition, the Office of Special Counsel found substantial violations of regulations and laws by Selective Service, J.A. at 60–68, and the Office of Personnel Management found substantive and procedural deficiencies in the agency's actions taken against Wilson. J.A. at 57–59.

■ Under the circumstances, we do not believe that any further proceedings are necessary on the issue of Wilson's entitlement to attorney's fees. We agree with the magistrate's conclusion that there is no need for a formal hearing on the issue

... where the agency, by virtue of the settlement agreement, has granted relief, which of necessity is predicated upon the principle that the personnel action at issue was unjustified and unwarranted. To require formal findings would discourage settlements by plaintiffs and lead to adjudications which would be an unwarranted imposition upon judicial and administrative adjudicatory resources.

J.A. at 22 n. 3. We therefore conclude that appellant has been the victim of an unfair and unjustified personnel action and that an award of fees is warranted in the interests of justice.

■ Because we find that no administrative proceedings were pending as of January 11, 1979 and that appellant is entitled to an award of attorney's fees, we reverse the district court's decision and remand for a determination of the appropriate amount.

*So ordered.*