795 F.2d 139
 254 U.S.App.D.C. 94, 14 Soc.Sec.Rep.Ser. 172,
Medicare&Medicaid Gu 35,481
 WASHINGTON HOSPITAL CENTER, et al.
v.
Otis R. BOWEN, Secretary, Health and Human Services, Appellant.
CAPITOL HILL HOSPITAL, et al.
v.
Otis R. BOWEN, Secretary, Health and Human Services, Appellant.
GEORGETOWN UNIVERSITY HOSPITAL, et al.
v.
Otis R. BOWEN, Secretary, Health and Human Services, Appellant.
DISTRICT OF COLUMBIA GENERAL HOSPITAL, et al.
v.
Otis R. BOWEN, Secretary, Health and Human Services, Appellant.
TUCSON MEDICAL CENTER
v.
Otis R. BOWEN, Secretary, Health and Human Services, Appellant.
 Nos. 85-5906, 85-5907, 85-5908, 85-5909 and 85-5910.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 27, 1986.
Decided July 8, 1986.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 84-02437).
 Ronald N. Sutter, Washington, D.C., for appellees in Nos. 85-5906 through 85-5910.
 Edward R. Cohen, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellant in Nos. 85-5906 through 85-5910. Royce C. Lamberth, R. Craig Lawrence, Asst. U.S. Attys., and Alfred Mollin, Atty., Dept. of Justice, Washington, D.C., also entered appearances, for appellant.
 Before WALD, Circuit Judge, and WRIGHT and McGOWAN, Senior Circuit judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 In 1983 Congress radically altered the Medicare payment scheme to create a Prospective Payment System ("PPS"). At that time, new language was added to 42 U.S.C. Sec. 1395oo (a), the statutory provision creating a Provider Reimbursement Review Board ("PRRB") to resolve disputes over payment amounts. In Health Care Financing Administration Ruling ("HCFAR") 84-1, however, the Secretary of Health and Human Services interpreted that amended provision to continue to require hospitals to await completion of a cost year and subsequent issuance of a Notice of Program Reimbursement ("NPR") before challenging PPS payments before the PRRB. The District Court below reached the same conclusion as thirteen other district courts which have considered the Secretary's interpretation,[1] finding it to be in conflict with the language of Sec. 1395oo (a) and therefore invalid. Tucson Medical Center v. Heckler, 611 F.Supp. 823 (D.D.C.1985). We agree that HCFAR 84-1 is contrary to congressional intent as expressed in the plain language and legislative history of the 1983 amendments.
 
 I. BACKGROUND
 
 2
 A. The Prior Scheme: Retrospective Reimbursement
 
 
 3
 For cost reporting years beginning before October 1, 1983, hospitals were reimbursed for the "reasonable cost" of inpatient hospital services furnished to Medicare patients. 42 U.S.C. Sec. 1395f(b) (1982). Under the "reasonable cost" system, which continues to apply to a limited class of providers, fiscal intermediaries such as Blue Cross make estimated interim payments to providers during the year and later retroactively adjust them to bring the amount paid into conformity with the actual, reasonable costs incurred by the hospital. 42 C.F.R. Secs. 405.405, 405.454 (1985). At the end of a cost reporting year the hospital submits a cost report to the intermediary, which audits the report to determine which costs are reimbursable. The intermediary's conclusion as to the total amount of reimbursement due the provider is contained in a Notice of Program Reimbursement ("NPR"). Id. Secs. 405.406(b), 405.453(f), 405.1803(a).
 
 
 4
 Under this retrospective payment system, a final determination of the correct amount of reimbursement cannot be made until after the end of the cost year and the issuance of the NPR. Id. Secs. 405.405(b), 405.454(f)(1). Consequently, the statutory provisions controlling appeals to the Provider Reimbursement Review Board ("PRRB" or "Board") require a hospital to have "filed a required cost report" and to challenge only "a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider." 42 U.S.C. Sec. 1395oo (a) (Supp. II 1984). Under this scheme it is clear that an appeal to the PRRB must await issuance of the NPR, which is the fiscal intermediary's "final determination ... as to the amount of total program reimbursement." See 42 C.F.R. Sec. 405.1803(a)(1).
 
 
 5
 B. The 1983 Amendments: The Prospective Payment System
 
 
 6
 The Social Security Amendments of 1983 instituted "a major change in the method of payment under medicare for inpatient hospital services." S.Rep. No. 23, 98th Cong., 1st Sess. 47, reprinted in 1983 U.S.Code Cong. & Ad.News 143, 187. Certain types of hospitals, such as psychiatric hospitals and children's hospitals, and certain types of costs, such as medical education, continue to be reimbursed on a reasonable cost basis. 42 U.S.C. Secs. 1395ww(a)(4), 1395ww(d)(1)(B) (Supp. II 1984). For most hospitals, however, Medicare now pays for inpatient services on the basis of prospectively determined rates.[2]
 
 
 7
 Congress instituted the Prospective Payment System ("PPS") in order "to reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost/effective hospital practices." H.R.Rep. No. 25, 98th Cong., 1st Sess. 132, reprinted in 1983 U.S.Code Cong. & Ad.News 219, 351. By informing hospitals in advance of the payments they will receive per patient for various types of treatment, Congress hoped to induce the hospitals to lower their costs to levels below the amount of the payments. After PPS has been phased in, hospitals will be paid according to a standard national rate calculated for each of approximately 470 treatment categories or "Diagnosis Related Groups" ("DRGs"). 42 U.S.C. Sec. 1395ww(d); 49 Fed.Reg. 34,728, 34,780-90 (1984).
 
 
 8
 In enacting PPS, Congress provided for a transition or "phase-in period to minimize disruptions that might otherwise occur because of a sudden change in reimbursement policy." H.R.Rep. No. 25 at 136, reprinted in 1983 U.S.Code Cong. & Ad.News at 355. During this period, initially scheduled to last three years and recently extended to four years, PPS payments will be based on a blend of a "DRG prospective payment rate" and a "hospital's target amount." 42 U.S.C. Sec. 1395ww(d)(1)(A). The hospital's target amount, referred to in the regulations as the "hospital-specific rate," is based on the hospital's actual costs during a designated "base year." 42 C.F.R. Secs. 412.70-.74. Over the course of the transition period, the proportion of the per-discharge payment which is based on the hospital's costs decreases from 75% to 25% while the proportion based on DRG amounts increases accordingly.[3] 42 U.S.C. Sec. 1395ww(d)(1), amended by Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99-272, Sec. 9102, 100 Stat. 82, 155 (1986).
 
 
 9
 The 1983 amendments also altered the statutory provision governing hospitals' appeals of PPS payment amounts to the PRRB. The new language provides for appeals by "any hospital which receives payments in amounts computed under [PPS]" and "is dissatisfied with a final determination of the Secretary as to the amount of payment under [PPS]." 42 U.S.C. Sec. 1395oo (a). The meaning of these amendments to Sec. 1395oo (a) is the central issue in this appeal.
 
 C. HCFAR 84-1 and the Hospitals' Appeals
 
 10
 Relying on the new language in Sec. 1395oo (a), hospitals began appealing intermediaries' final determinations of the hospital-specific portion of their PPS rates. The Board accepted jurisdiction over at least 31 such appeals. Joint Appendix ("J.A.") at 94-155. On May 29, 1984, however, the Secretary issued HCFAR 84-1, reversing the Board's jurisdictional position. The Secretary ruled that
 
 
 11
 an intermediary's estimation of a hospital's base year costs and modifications thereto, made for purposes of determining the hospital-specific rate under PPS ... is neither a final determination of program reimbursement nor a notice of the amount of program reimbursement as required by the statute and regulations. Accordingly, the PRRB has jurisdiction to review an intermediary's [determination] ... only after an NPR has been issued for the hospital's first cost reporting period under the prospective payment system.
 
 
 12
 49 Fed.Reg. 22,413, 22,415 (1984). An identical interpretation of Sec. 1395oo (a) is contained in the PPS regulations. 42 C.F.R. Sec. 412.72(b)(1) (1985).
 
 
 13
 Each of the hospitals in these consolidated cases attempted to appeal some aspect of the calculation of its target amount or hospital-specific rate to the PRRB. J.A. at 200-08.[4] Each had received a "Final Notice of Base Period Cost and Target Amount Per Discharge" before filing the appeal. Id. at 187-99. In each case, the PRRB informed the hospital that under HCFAR 84-1, "since an NPR has not been issued for the applicable PPS cost year, the Board is precluded from conducting a hearing." Id. at 209-16. The hospitals then filed complaints in the District Court seeking declarations that HCFAR 84-1 is invalid and orders requiring the PRRB to process their appeals. Id. at 13-53. The District Court consolidated these cases, granted summary judgment for the hospitals, and ordered the requested relief. 611 F.Supp. at 827.
 
 II. ANALYSIS
 A. Standard of Review
 
 14
 The Secretary argues that his interpretation of Sec. 1395oo (a), embodied in HCFAR 84-1 and the PPS regulations, is entitled to substantial deference. The District Court declined to defer to the Secretary's interpretation, finding his position in HCFAR 84-1 to be inconsistent with other regulations and inadequately explained. 611 F.Supp. at 826-27.
 
 
 15
 A court's first task in reviewing an agency's construction of a statute is to determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If a statute is silent or ambiguous, a court may assume that Congress implicitly delegated the interpretive function to the agency, but no such delegation may be found where Congress' intent is clear. Id. at 842-44, 104 S.Ct. at 2781-82; Montana v. Clark, 749 F.2d 740, 745 (D.C.Cir.1984) ("deference to an agency's interpretation constitutes a judicial determination that Congress has delegated the norm-elaboration function to the agency" and it would be absurd to assume that "Congress delegated authority to vitiate or disregard its intent"), cert. denied, --- U.S. ----, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). In short, "[t]he traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." Board of Governors of the Federal Reserve System v. Dimension Financial Corp., --- U.S. ----, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986).
 
 
 16
 Our inquiry into congressional intent encompasses both statutory language and legislative history. In conducting this inquiry, "we are not required to grant any particular deference to the agency's parsing of statutory language or its interpretation of legislative history." Rettig v. Pension Benefit Guaranty Corp., 744 F.2d 133, 141 (D.C.Cir.1984). By independently assessing congressional intent, the court ensures that "deference is not ... a device that emasculates the significance of judicial review.... A reviewing court 'must reject administrative constructions of [a] statute ... that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.' " Securities Industry Association v. Board of Governors of the Federal Reserve System, 468 U.S. 137, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984) (citation omitted).
 
 
 17
 The District Court concluded that "the plain language added to section 1395oo (a) as part of the prospective payment system enacted by Congress in 1983 establishes that a determination such as the one made by the intermediary here is reviewable by the [PRRB] before an NPR is issued." 611 F.Supp. at 827. After independently assessing congressional intent, we reach the same conclusion, obviating any decision as to whether the District Court or the Secretary has the better of the deference debate.[5]
 
 B. Statutory Language
 
 18
 The many district courts which have interpreted Sec. 1395oo (a) to permit PPS appeals prior to issuance of an NPR have, like the Eleventh Circuit, observed that the statute "appear[s] to set up two different avenues of appeal for hospitals receiving medicare payments." Charter Medical Corp. v. Bowen, 788 F.2d 728, 732 (11th Cir.1986) (dicta). The statute provides that
 
 
 19
 [a]ny provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... and ... any hospital which receives payments in amounts computed under subsection (b) or (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board, if--
 
 
 20
 (1) such provider--
 
 
 21
 (A)(i ) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider ..., or
 
 
 22
 (ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1395ww of this title, ...
 
 
 23
 (2) the amount in controversy is $10,000 or more, and
 
 
 24
 (3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i), or with respect to appeals under paragraph (1)(A)(ii), 180 days after notice of the Secretary's final determination....
 
 
 25
 42 U.S.C. Sec. 1395oo (a) (Supp. II 1984). The references to subsections (b) and (d) of Sec. 1395ww are to provisions on calculating PPS payments.[6] The italicized portions were added by the Social Security Amendments of 1983. Pub.L. No. 98-21, Sec. 602(h)(1), 97 Stat. 65, 165 (1983).
 
 
 26
 Viewing the amendments as a whole, we are inescapably drawn to the same conclusion as the District Court: Sec. 1395oo (a) "clearly contemplates two different kinds of appeal. One begins when the intermediary issues an NPR; the other, when the intermediary issues a notice of what will be paid under the PPS system." 611 F.Supp. at 825. Congress added new language to three different places in the statute in order to create parallel provisions for cost reimbursement and PPS appeals governing who may appeal, what determination may be appealed, and when an appeal must be filed. Our overall impression that Congress created a dual system to reflect the two different methods of calculating Medicare payments is further strengthened by considering the key changes separately.
 
 
 27
 The opening portion of Sec. 1395oo (a) defines who may appeal to the PRRB.[7] The Secretary argues that the new language was intended solely to extend coverage of the old appeals route to PPS payments. Were that the case, however, no change at all would have been necessary in the opening paragraph. Under the interpretation contained in HCFAR 84-1, the only hospitals which can appeal PPS payments to the PRRB are those which have "filed a required cost report" and are seeking "a hearing with respect to such cost report"--the same class of providers already specified in the pre-1983 statute. To accept the Secretary's interpretation we must assume that Congress added sixty words to the opening paragraph of Sec. 1395oo (a) for no reason at all. This we cannot do consistently with our obligation to construe a statute so as "to give effect, if possible, to every word Congress used." Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); see Young v. Community Nutrition Institute, --- U.S. ----, ----, 106 S.Ct. 2360, ----, 90 L.Ed.2d 959 (1986) (upholding agency interpretation which does not render the statutory provision superfluous).
 
 
 28
 The effect of the new language in the opening paragraph of Sec. 1395oo (a), contrary to the Secretary's interpretation, is to eliminate the requirement that PPS recipients file a cost report prior to appeal. See Redbud Hospital District v. Heckler, Medicare & Medicaid Guide (CCH) p 34,085 at 9884 (N.D.Cal. July 30, 1984) The pre-1983 language required the filing of "a required cost report" but the new language only requires hospitals which receive PPS payments to file "such reports ... as the Secretary may require in order to make payment under [PPS]." Because Congress chose different language to describe the two different types of reports, we must "presume that Congress intended the terms to have different meanings." Wilson v. Turnage, 750 F.2d 1086, 1091 (1984), vacated on other grounds, 755 F.2d 967 (D.C.Cir.1985). In addition, a cost report is not necessary "in order [for the Secretary] to make payment under [PPS]." Under the cost reimbursement system, "[s]ince actual costs of services cannot be determined until the end of the accounting period, the providers must be paid on an estimated cost basis during the year." 42 C.F.R. Sec. 405.454(b) (1985). Under the reimbursement system, their final payments cannot be made until a cost report has been filed and verified. Id. Sec. 405.454(f). Under PPS, in contrast, payment amounts are independent of current costs and can be determined with finality prior to the beginning of the cost year. Id. Sec. 412.71(d). Thus a year-end cost report is not a report which is necessary in order for the Secretary to make PPS payments, and the appeals provision applicable to PPS recipients cannot be read to require hospitals to file cost reports and await NPRs prior to filing a PRRB appeal.[8]
 
 
 29
 Congress' intent to eliminate the NPR requirement for PPS appeals is, however, most clearly revealed in the addition of subsection (1)(A)(ii). Prior to 1983, a provider of services could appeal to the PRRB when it was "dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement." 42 U.S.C. Sec. 1395oo (a)(1)(A) (1982). As the Secretary points out, Congress had to alter this language about "reimbursement" to accommodate the new prospective payment system. This change alone, however, could have been made by adding a word or two to subsection (1)(A). Indeed, in other portions of the 1983 amendments Congress managed the switch from the language of reimbursement to that of PPS payments quite economically. See, e.g., Pub.L. No. 98-21 at Sec. 602(h)(4), 97 Stat. at 165 (replacing "cost reimbursement" in Sec. 1395oo (h) with "payment of providers of services" ). Instead, in this instance Congress added an entire new subsection which the Secretary's interpretation would effectively reduce "to mere surplusage." 611 F.Supp. at 826.
 
 
 30
 The existing subsection on cost reimbursement appeals refers specifically to the NPR, which contains the intermediary's determination "as to the amount of total program reimbursement." By adding subsection (1)(A)(ii), which contains no such reference to NPRs, Congress expressed its clear intention to change the prerequisites for PPS appeals. The new subsection refers to a determination of "the amount of the payment under subsection (b) or (d) of section 1395ww of this title." 42 U.S.C. Sec. 1395oo (a)(1)(A)(ii). Since everyone agrees that the phrase "amount of total program reimbursement" in subsection (1)(A)(i) refers to the NPR, the amendment referring to the "amount of the payment under [PPS]" must refer to something other than the NPR. See Wilson v. Turnage, 750 F.2d at 1091 (use of different language demonstrates that Congress intended different meanings).
 
 
 31
 The statute itself explains what Congress meant by "the amount of the payment under subsection (b) or (d) of section 1395ww." Section 1395ww(d) contains the methods for calculating PPS payments, including payments during the transition period. During that period, "the amount of the payment with respect to the operating costs of inpatient hospital services ... for inpatient hospital discharges in a cost reporting period" is the weighted sum of "the hospital's target amount" and a "DRG prospective payment rate." The proportions of these two components are fixed by statute; the DRG prospective payment rate is fixed by the Secretary and is not subject to judicial review. 42 U.S.C. Secs. 1395ww(d)(1)(A), 1395ww(d)(7)(B); see supra at 6. Thus, the only variable factor in the final determination as to the amount of payment under Sec. 1395ww(d) is the hospital's target amount, which the Secretary refers to as the hospital-specific rate.[9] This target amount is defined in Sec. 1395ww(b)(3)(A) as a hospital's allowable operating costs during a fixed twelve month period.
 
 
 32
 The Secretary argues that the "amount of payment" referred to in subsection (1)(A)(ii) is the total amount of PPS payments plus cost reimbursement, a figure calculated only in the NPR. The plain statutory language indicates otherwise. The subsection refers to the amount of payment under Sec. 1395ww(d), which is the sum of a DRG per-patient rate and a target amount per patient. 42 U.S.C. Sec. 1395ww(d)(1)(A); see also id. Secs. 1395ww(a)(4), 1395ww(b)(3)(A) (target amount is per patient). In addition, differences in phrasing between subsection (1)(A)(i) on reimbursement and subsection (1)(A)(ii) on PPS payments indicate that Congress was referring to per-patient amounts in the latter subsection. Cost reimbursement appeals are from determinations of "total program reimbursement ... for the period covered by [the cost] report," while PPS appeals are from determinations of the "amount of the [PPS] payment." Id. Sec. 1395oo (a)(1)(A) (emphasis added). Congress' omission of "total" and "period" as modifiers in subsection (1)(A)(ii) is a clear signal that the statute refers to per-patient amounts rather than the overall figures contained in the NPR.
 
 
 33
 Although the 1983 amendments are linguistically complicated, their semantic twists and turns do not obscure the fact that Congress has "unambiguously expressed its intent through its choice of statutory language." Young v. Community Nutrition Institute, --- U.S. ----, ----, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986).[10] The amount of payment to hospitals during the PPS transition period is a weighted sum of a hospital-specific amount and a DRG amount, with the weights and the DRG amount fixed by statute or the Secretary. Thus, once there is a final determination as to the hospital-specific amount there is a final determination as to the amount of payment as required by Sec. 1395oo (a)(1)(A)(ii). That amount is the per-patient amount calculated under Sec. 1395ww(d) and is final once the Secretary has published the DRG amounts (as he has) and finally determined the hospital's target amount.[11] Here each of the hospitals has received a "Final Notice of Base Period Cost and Target Amount Per Discharge." The statute requires no more to trigger the hospitals' right to appeal PPS payments to the PRRB.
 
 C. Legislative History
 
 34
 Our "plain meaning" reading of the statutory language is confirmed by the legislative history of the 1983 amendments. Although the Secretary invokes legislative history to support his interpretation in HCFAR 84-1, he focuses too narrowly on some descriptive language in the reports while overlooking the clearly-expressed purpose of the 1983 amendments as a whole.
 
 
 35
 Congress' primary purpose in switching from cost reimbursement to prospective payment was to provide hospitals with "predictibility regarding payment amounts" and "to reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost/effective hospital practices." H.R.Rep. No. 25, 98th Cong., 1st Sess. 132, reprinted in 1983 U.S.Code Cong. & Ad.News 219, 351. Because the key to the PPS system is the hospital's advance knowledge of the amount of payment it will receive, payment rates must be determined with finality prior to the beginning of the hospital's cost year. Our "plain meaning" reading of the 1983 amendments effectuates the overriding congressional intent expressed in the legislative history by hastening the process of review so that a hospital will know at the earliest possible date exactly how much it will be paid per patient.
 
 
 36
 A hospital's need to know in advance how much it will receive under PPS applies during the transition period as well. In order to ensure that PPS rates during the transition period would be determined with finality prior to the start of the fiscal year, Congress authorized the Secretary to rely on estimates of base year costs rather than to wait for issuance of the base year NPR. The conference report emphasizes that "the hospital's specific portion of the rate must be determined in advance of the hospital's fiscal year under the system." H.R.Rep. No. 47, 98th Cong., 1st Sess. 182, reprinted in 1983 U.S.Code Cong. & Ad.News 404, 472. By withholding PRRB review until an NPR has been issued, long after the close of the hospital's fiscal year, the Secretary "frustrate[s] the policy that Congress sought to implement." Securities Industry Association v. Board of Governors of the Federal Reserve System, 468 U.S. 137, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984).[12]
 
 
 37
 Although the Secretary acknowledges this legislative history in the portions of his brief describing the PPS scheme, Brief for Appellant at 7-11, he fails to acknowledge its import in construing Sec. 1395oo (a). Instead, he focuses on two narrower aspects of the legislative history. First, he notes that the changes in Sec. 1395oo (a) were included among the conforming amendments in the 1983 statute. As the hospitals point out, however, changes in the timing of PRRB review were necessary to "conform" to the radical changes made in the method of calculating Medicare payments. Under PPS, hospitals receive prospectively established payments rather than retrospectively established reimbursements. Under our reading of the statutory language, Sec. 1395oo (a) simply conforms the PRRB review process to this change in the method of calculating Medicare payments.
 
 
 38
 The Secretary relies heavily on language in the congressional reports stating that the amendments "provide for the same procedures for administrative and judicial review of payments under the prospective system as is currently provided for cost-based payments. In general, the same conditions, which now apply for review by the PRRB and the courts, would continue to apply." H.R.Rep. No. 25 at 143, reprinted in 1983 U.S.Code Cong. & Ad.News at 362; see also S.Rep. No. 23, 98th Cong., 1st Sess. 57, reprinted in 1983 U.S.Code Cong. & Ad.News 143, 197. But, as one district court has noted, " '[i]n general' implies that, 'in particular', some of the conditions would change." Greenville Hospital System v. Heckler, 642 F.Supp. 15, 21 (D.S.C. 1985), appeal dismissed, No. 85-1860 (4th Cir. Dec. 18, 1985). The conditions in Sec. 1395oo (a) were changed only to conform the basic principles of PRRB review to the new payment approach under PPS. Certainly descriptive language in congressional reports as general as these references cannot override the plain meaning of the statutory language in which Congress has directly expressed its intentions. The legislative history cited by the Secretary thus fails to alter our reading of Congress' intent in amending Sec. 1395oo (a).
 
 III. CONCLUSION
 
 39
 HCFAR 84-1 is contrary to congressional intent as expressed in the language and legislative history of the 1983 amendments to Sec. 1395oo (a). The statute provides for PRRB review once there has been a final determination of the amount of payment under PPS, which during the transition period requires only a final determination of a hospital's target amount. Hospitals therefore need not wait until an NPR has been issued to challenge the hospital-specific portion of transition-period PPS rates. We hold that HCFAR 84-1 is inconsistent with the statute and that the PRRB erred in refusing jurisdiction over the hospitals' claims. The order of the District Court is accordingly
 
 
 40
 Affirmed.
 
 
 
 [1]
 The plaintiff hospitals have identified thirteen district court opinions rejecting the Secretary's interpretation of Sec. 1395oo (a) embodied in HCFAR 84-1. Brief of Plaintiffs/Appellees at 1-2; Supplemental Memorandum at 1
 
 
 [2]
 The amendments create a prospective payment system, not a prepayment system as the District Court stated. 611 F.Supp. at 826. The term "prepayment" describes a method of distributing payments and implies that hospitals actually receive payments before treating a patient. The primary difference between cost reimbursement and prospective payment, however, is the manner in which payments are computed, not distributed. Under PPS the amount of payment per discharge is fixed in advance, is not based on a hospital's actual costs, and is not subject to retroactive adjustment. Hospitals receive these payments periodically, based either on actual discharges or on estimates as to the number and mix of cases. 42 C.F.R. Sec. 405.454(m) (1985). By contrast, reasonable cost payments are only estimates of the amount that will eventually be found to be reimbursable, so the amount of payment per patient is subject to retroactive adjustment. Id. Sec. 405.454(b)
 
 
 [3]
 As amended in April 1986, the statute sets the target percentage--the proportion of the PPS payment based on a hospital's actual costs--at 75% for the year beginning October 1, 1983, 50% for the next year, 45% for the third year, and 25% for the fourth and final transition year. The DRG percentage accordingly rises from 25% in the first year to 50% in the second, 55% in the third, and 75% in the fourth transition year. 42 U.S.C. Sec. 1395ww(d)(1)(C), amended by Pub.L. No. 99-272, Sec. 9102(b), 100 Stat. 82, 155 (1986)
 
 
 [4]
 Each of these hearing requests alleged that the amount in controversy was $10,000 or, more as required by 42 U.S.C. Sec. 1395oo (a)(2), countering the Secretary's contention that an amount in controversy cannot be calculated until an NPR has been issued. The hospitals simply multiplied the disputed per-patient amount by the number of Medicare patients they had discharged during the base year. See J.A. at 200-08
 
 
 [5]
 We note, however, that the District Court may have erred in characterizing the Secretary's position on the need for an NPR as a "reversal of what until then had been the Secretary's consistent interpretation of the jurisdictional statute." 611 F.Supp. at 826. The Secretary seems to have consistently required issuance of an NPR before allowing appeal of PPS payments to the Board. See 42 C.F.R. Secs. 405.1801(a)(1)(iii)-(iv), 405.1835(b), 48 Fed.Reg. 39,752, 39,834-35 (1983) (interim final PPS regulations); 49 Fed.Reg. 234, 279 (1984) (discussion in preamble to final regulations). Any PRRB decisions to the contrary do not establish an inconsistency in the Secretary's position. See St. Francis Hospital Center v. Heckler, 714 F.2d 872, 874 (7th Cir.1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984)
 Any inconsistency in the Secretary's position arises because there seem to be two different sets of regulations which address the extent to which an intermediary's determination of the hospital-specific portion is "final." Compare 42 C.F.R. Sec. 405.1801(a) (NPR is the final PPS determination for purposes of appealability) with 42 C.F.R. Sec. 412.71(d) (intermediary's determination of target amount is final). While these conflicting regulations need to be reconciled or rejected, see infra at 148 & n. 11, they do not represent a "reversal" in the Secretary's interpretation of Sec. 1395oo (a).
 
 
 [6]
 Subsection (d) of Sec. 1395ww sets out methods for calculating PPS payments and refers to subsection (b) for an explanation of how to calculate a hospital's target amount. 42 U.S.C. Secs. 1395ww(d)(1)(A)(i)(I), 1395ww(d)(1)(A)(ii)(I). At oral argument, the Secretary contended for the first time that subsection (b), added to the Medicare statute in 1982, involves cost reimbursement and so supports his argument that a single appeals process applies for both reimbursement and PPS payments. The mentions of Sec. 1395ww(b) in Sec. 1395oo (a), are, however, more easily read as referring only to the method for calculating the target amount which is included in subsection (b). The 1983 amendments to Sec. 1395oo (a), both as proposed in the House and as adopted by Congress, referred only to subsection (d), which solely involves PPS payments. H.R.Rep. No. 25, 98th Cong., 1st Sess. 291 (1983); H.R.Rep. No. 47, 98th Cong., 1st Sess. 106 (1983) U.S.Code Cong. & Admin.News 1983, p. 143. The references to subsection (b) were added in a concurrent resolution after final passage of the amendments; the modifications made at that point were said not to make any substantive changes. H.R.Con.Res. 102, Sec. 6(12), 98th Cong., 1st Sess., 129 Cong.Rec. H1824, H1826 (daily ed. April 7, 1983); 129 Cong.Rec. H1824 (daily ed. April 7, 1983) (statement of Rep. Pickle). Thus, the last minute addition of references to subsection (b) should not be read to expand the scope of the 1983 amendments from PPS appeals to both PPS and cost reimbursement appeals
 
 
 [7]
 The Secretary correctly notes that the phrase "any hospital which receives [PPS] payments" simply defines which providers may appeal to the PRRB under Sec. 1395oo (a). We therefore reject the hospitals' convoluted argument that they are entitled to immediate review of PPS payments because the verb "receives" is in the present tense. The hospitals are entitled to review only when PPS payment amounts have been finally determined within the meaning of 42 U.S.C. Sec. 1395oo (a)(1)(A)(ii). See infra at 148 & n. 11
 
 
 [8]
 Our conclusion that Congress did not intend that cost reports would be required for PPS recipients seeking to appeal to the PRRB is bolstered by another provision of the 1983 amendments which directs the Secretary to continue requiring cost reporting by recipients of PPS payments. 42 U.S.C. Sec. 1395ww(f)(1) (Supp.II 1984). The reason for the continuing requirement of cost reports was that Congress thought such reports would not otherwise be required from PPS recipients and wanted to ensure a continuing flow of information for states which relied on such reports for their own reimbursement programs. H.R.Rep. No. 47, 98th Cong., 1st Sess. 182, reprinted in 1983 U.S.Code Cong. & Ad.News 404, 472. Thus, Congress seemingly thought that PPS recipients would not have to file cost reports at all absent its special directive to the Secretary
 
 
 [9]
 In arguing that determination of the hospital-specific portion of the PPS payment is not a final determination of the "amount of payment" for purposes of subsection (1)(A)(ii), the Secretary stresses that the intermediary has only made a final determination of the hospital-specific rate, not the entire payment amount. The phrase "hospital specific rate" is, however, the product of the Secretary's own regulations. See 42 C.F.R. Secs. 412.70, 412.73. The statute itself refers to the hospital-specific portion of the PPS payment as the target amount. 42 U.S.C. Sec. 1395ww(d)(1)(A)
 
 
 [10]
 Several aspects of Sec. 1395oo (a) reinforce our conclusion that congressional intent is clear and there has been no implicit delegation of authority to the Secretary to interpret the review provision. See supra at 143-144. One factor is the specificity of the statutory language at issue. When Congress uses broad and imprecise language, courts may assume that the agency has been delegated broad interpretive authority. See AFL-CIO v. Donovan, 757 F.2d 330, 341 n. 7 (D.C.Cir.1985). By contrast, specific statutory language which is "the fruit [ ] of a conscious congressional effort to detail" the scope of an agency's powers should not be read as conferring interpretive discretion on the agency. Vanguard Interstate Tours, Inc. v. ICC, 735 F.2d 591, 596 (D.C.Cir.1984)
 A second consideration is the fact that Sec. 1395oo (a) deals with procedures for challenging agency actions, not the substance of those actions. In Vanguard we rejected an agency interpretation, finding that Congress had not accorded the agency broad discretion in interpreting the statutory provision governing who could intervene in its proceedings. 735 F.2d at 596. In general, Congress is less likely to delegate interpretive authority to agencies on basic procedural matters--such as rights of access to challenge or obtain judicial review of agency rulings--than it is on substantive matters such as when and what to regulate. In Chevron, the Court was most concerned with judicial intrusion into policy battles which Congress had either inadvertently failed to resolve or intentionally left to the agency to resolve. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 865-66, 104 S.Ct. 2778, 2793-94, 81 L.Ed.2d 694 (1984); see also Young, --- U.S. ----, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986) (upholding an agency's interpretation of its regulatory authority under a health and safety statute). By contrast, the Supreme Court did not even cite Chevron in a recent decision which rejected the Secretary's interpretation of statutory provisions governing the availability of judicial review of Medicare Part B determinations; the Court simply assessed the language and legislative history of the provisions and concluded that the agency's interpretation was contrary to Congress' clearly expressed intent. Bowen v. Michigan Academy of Family Physicians, --- U.S. ----, ----, 106 S.Ct. 2133, 2137, 2142, 90 L.Ed.2d 623 (1986); see also Bowen v. New York, --- U.S. ----, ---- & n. 10, 106 S.Ct. 2022, 2027, 2029, & n. 10, 90 L.Ed.2d 462 (1986) (rejecting agency interpretation of provision governing time for seeking judicial review).
 
 
 [11]
 The statute requires that a determination as to the amount of PPS payments be final before it can be appealed to the PRRB. The Secretary does not dispute that his regulations specify that the intermediary's determination of a hospital's target amount per patient is final, 42 C.F.R. Sec. 412.71(d), but argues instead that only an NPR is a "final determination" for purposes of Sec. 1395oo (a), 42 C.F.R. Sec. 405.1801(a)(3). We have already rejected the NPR requirement as inconsistent with the statutory scheme--nothing in the statute or legislative history supports the Secretary's position that he is authorized to impose an additional requirement of finality in the form of an NPR once the hospital's target amount has been set with finality pursuant to Sec. 1395ww(d) and the implementing regulations. Because the Secretary's own regulations characterize the fiscal intermediary's setting of the hospital-specific rate as final, we find that the intermediary's determination of the hospital-specific portion completes the "final determination" of PPS payment amounts referred to in 1395oo (a)
 
 
 [12]
 Although HCFAR 84-1 frustrates congressional intent by delaying PRRB review until long after hospitals have received their PPS payments, the Secretary's interpretation does not--as some district courts have mistakenly held--interact with another regulation to bar any review whatsoever. Plaintiffs here did not base their argument on this second regulation, 42 C.F.R. Sec. 412.72(a)(3)(ii) (1985), which is often referred to as the prospective relief rule. That regulation applies only to appeals involving the NPR for the base year, which is used to calculate the hospital-specific portion. The regulation provides that the results of such base-year appeals will only be applied prospectively. See Charter Medical Corp. v. Bowen, 788 F.2d 728, 734-35 (11th Cir.1986). Like HCFAR 84-1, the effect of the prospective relief regulation is to delay the point at which a hospital will definitively know the exact amount of its PPS payments, but the two regulations--either separately or together--do not completely bar relief for hospitals whose hospital-specific rates have been set erroneously