GEORGETOWN UNIVERSITY
HOSPITAL, et al., Plaintiffs,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

GEORGE WASHINGTON UNIVERSITY
HOSPITAL, et al., Plaintiffs,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

Civ. A. Nos. 85–3650, 85–3653.

United States District Court,
District of Columbia. `

Nov. 17, 1987.

As Amended Jan. 29, 1988.

Ronald N. Sutter, Powers, Pyles, Sutter & Miles, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., Ronald E. Robertson, General Counsel, Terry Coleman, Asst. General Counsel, Dept. of Justice, Civ. Div., Washington, D.C., Stephen B. Weiss, Dept. of Health and Human Services, Washington, D.C., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs are not-for-profit hospitals that furnish inpatient services to Medicare beneficiaries and receive payments for these services from the Department of Health and Human Services. In these consolidated actions, they seek review of the payment amounts that were set by their fiscal intermediaries for their first two cost reporting years under the new Prospective Payment System ("PPS").[1] A Memorandum and Order dated May 29, 1986, denied defendant's motion to remand these proceedings to the Provider Reimbursement Review Board ("PRRB" or "the Board"). The case is currently before the court on cross motions for summary judgment.

## I.

As a preliminary matter, defendant's renewed suggestion that this court lacks jurisdiction over plaintiffs' claims

warrants a brief description of the Medicare appeals process and a review of the procedural history of this case. 42 U.S.C. § 1395oo (a) provides that a hospital that is dissatisfied with a final payment determination of its fiscal intermediary may appeal that determination to the PRRB. Because the Board lacks the authority to rule on particular issues (e.g., the legality of an agency regulation), *see* 42 C.F.R. § 405.1867, a hospital that has filed an appeal under 42 U.S.C. § 1395oo may request a determination of the Board's authority to decide the issues raised by that appeal. 42 U.S.C. § 1395oo (f)(1). By statute, the Board has thirty days to consider this request (commonly known as an expedited judicial review petition). *Id.* If the Board determines that it lacks the authority to decide the issue, or if it fails to render any decision on the hospital's petition by the end of the 30 day period, the hospital has sixty days to file a civil action to determine the issues raised in its appeal. *Id.*

The twelve hospitals in these actions all appealed to the PRRB upon receiving final notices from their intermediaries of the PPS reimbursement rates for their first PPS cost reporting years. The Board denied jurisdiction over their claims based on HCFAR 84–1, a ruling issued by the Secretary that held that hospitals must wait until they receive a notice of program reimbursement ("NPR") to file an appeal for a PPS year. The hospitals appealed the Board's jurisdictional ruling to this court, arguing that HCFAR 84–1 was inconsistent with 42 U.S.C. § 1395oo (a), the statute governing PRRB appeals. In *Tucson Medical Center v. Heckler*, 611 F.Supp. 823 (D.D.C.1985), *aff'd sub nom. Washington Hospital Center v. Bowen*, 795 F.2d 139 (D.C.Cir.1986), this court invalidated HCFAR 84–1, declared that "the Board has jurisdiction over the appeals of the plaintiffs under the prospective payment system" and remanded for "the expeditious processing" of those appeals. *See id.* at 827. Upon remand, plaintiffs filed appeals for their second PPS years and petitioned for expedited judicial review pursuant to 42

---

1. The fiscal intermediaries are non-governmental organizations, such as Blue Cross, which act as the Secretary's agents in reviewing claims and awarding reimbursement.

U.S.C. § 1395oo (f)(1). The Board failed to rule on these expedited judicial review petitions within the 30 day period allowed by the statute. Plaintiffs therefore filed these actions within 60 days of the expiration of the 30 day period to litigate the merits of their claims regarding their payment amounts under the PPS system.

The Secretary acknowledges, as he must, that plaintiffs petitioned for expedited judicial review and that the Board failed to act upon these requests within the 30 day time period. *See* Answer in *Georgetown University Hospital v. Bowen* at 2 (admitting the allegations in ¶¶ 19–21 of the complaint). Nonetheless, he contends that this court lacks subject matter jurisdiction over the plaintiffs' claims because the Board failed to evaluate its own jurisdiction over these claims upon remand, an action that the Secretary argues is a prerequisite to consideration of any petition for expedited review. *See* 42 C.F.R. § 405.1842(b)(2).

This argument ignores the prior history of this case. As noted above, the Board's initial determination that it did not have jurisdiction over these appeals was explicitly reversed by this court in *Tucson Medical Center v. Heckler,* 611 F.Supp. 823 (D.D.C.1985). On remand, no stay of the court's order was sought by the defendant. Therefore, at the time plaintiffs' petitions for expedited review were filed, the Board's jurisdiction had been established; no jurisdictional question remained for the Board to "consider." [2] Under these circumstances, the Board's unwarranted refusal to abide by an explicit court order directing it to process the appeals (or to seek a stay from the effect of that order) can not now be used by the defendant as a means to further delay the resolution of these plaintiffs' claims.

II.

Plaintiffs seek review of their rates of reimbursement for several cost reporting years under the new PPS system. Until October 1, 1983, hospitals that provided

services covered under the Medicare program were reimbursed for the lesser of the "reasonable cost of such services" or the "customary charges with respect to such services." 42 U.S.C. § 1395f(b) (1982). The "reasonable cost" of a provider's services was determined by a fiscal intermediary after the close of the fiscal year, based on a "cost report" submitted by the provider. 42 C.F.R. § 405.406(b) (1983). Under the PPS, which applies to all cost reporting years beginning after October 1, 1983, hospitals are now paid a predetermined rate for each patient treated regardless of their actual operating costs. The amount of reimbursement received for an individual discharge depends, in part, on which of the approximately 470 "diagnosis related groups" ("DRGs") applies to that patient's diagnosis and treatment. 42 U.S.C. § 1395ww(d)(3). Each DRG is assigned a weight based on the expected cost of treating cases within that group. The amount of reimbursement received by the hospital is determined by multiplying this weight by a per discharge payment rate that is based on the average cost of treating a Medicare patient. *See* 42 C.F.R. § 412.60.

By 1988, this per discharge payment will be a uniform national average. However, the Medicare Act provides for a four year transition period in order to minimize the disruption caused by the change in reimbursement policy. *See* H.R.Rep. No. 98–25, 98th Cong., 1st Sess. 136, *reprinted in* 1983 U.S.Code Cong. & Admin.News 355. During this transition period, an individual hospital's per discharge rate is determined by combining that hospital's own historical average costs with regional and national average costs. The portion of the rate that represents a hospital's historical average costs is known as the "target amount" or the "hospital specific portion." The Medicare statute defines this "target amount" as a hospital's "allowable operating costs [per discharge] of inpatient hospital services" for the fiscal year preceding the last fiscal year during which the hospital was

---

**2.** The Secretary has not suggested any basis other than HCFAR 84–1 for denying jurisdiction over these appeals.

reimbursed under the reasonable cost method, adjusted by an inflation factor. 42 U.S.C. § 1395ww(d)(I)(A)(i)(I); 42 U.S.C. § 1395ww(b)(3)(A). This fiscal year is known as the "base year;" for most hospitals, the base year used for calculating their "target amount" is 1982. Thus, as the Secretary notes, "the intermediary's determination of a hospital's allowable Medicare costs for 1982 serves two functions: (1) it establishes how much a hospital will be reimbursed for its 1982 costs; and (2) it provides one element in establishing a hospital's reimbursement rate for transition period years under the prospective payment system." Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment at 12.

During the transition period, the per discharge payment rate is determined by combining the target amount with an estimate of regional and national costs known as the "DRG prospective payment rate" or the "federal portion." The weight accorded to these two components varies during each of the four transition years; the federal portion constitutes 25% of the rate for the first PPS year; 50% for the second; 55% for the third; and 75% for the fourth. 42 U.S.C. § 1395ww(d)(1)(C)(i)–(iv), as amended by Pub.L. No. 99–272, § 9102 (April 7, 1986). After the fourth year, the prospective payment rate will be based exclusively on the federal portion.

This case requires the court to determine the standard of review for an intermediary's determination of an individual hospital's "target amount" during the PPS transition period. Under the Secretary's regulations, the Medicare intermediaries must use the "best data available" to determine the target amount component of a hospital's PPS rate before the beginning of that hospital's first PPS year. 42 C.F.R. § 412.71(d). These regulations also provide that the intermediary's determinations are "final and may not be changed after the first day" of the hospital's first PPS year except in the limited circumstances set forth in 42 C.F.R. § 412.72. *See id.* Section 412.72(a)(3) provides that if a provider obtains a final court decision recognizing additional costs as "allowable" for its base year, then that provider may also incorporate these additional costs in its target amount *but only for PPS years beginning after the date of the decision.* This rule is termed the "prospective relief regulation" by the defendant.

In earlier litigation, the Secretary apparently took the position that the "prospective" relief provided by § 412.72(a)(3) was the sole remedy available to a hospital whose intermediary mistakenly excluded "allowable" costs from its target amount. *See Charter Medical Corp. v. Bowen,* 788 F.2d 728, 734–35 (11th Cir.1986); *St. Francis Hospital v. Heckler,* CCH Medicare and Medicaid Guide, ¶ 34,918 (S.D.W.Va.1985), *reversed on jurisdictional grounds sub nom. St. Francis Hospital v. Bowen,* 802 F.2d 697 (4th Cir.1986). The Secretary now argues, however, that the "prospective relief regulation" applies only to successful appeals of base year costs and does not preclude a hospital from obtaining "retroactive" relief for cost reporting years beginning before the final decision on its allowable base year costs by filing a separate appeal for the PPS year in question. However, according to the Secretary, the standard of review in such a proceeding is limited to determining whether the intermediary used "the best data available at the time" the target amount was set. The plaintiff may recover for the error of an intermediary only if its estimation "was unreasonable and clearly erroneous in light of the data available at the time the estimation was made." 42 C.F.R. § 412.72(b).

The case of Greater Southeast Community Hospital ("Greater Southeast") provides an example of the defendant's approach. Greater Southeast appealed its intermediary's determination that its intermediate care unit was not properly classified as a special care unit. This court, *per* Judge Gesell, ruled in favor of Greater Southeast for the 1977–80 cost reporting years and the parties subsequently entered into a stipulation applying Judge Gesell's decision to the 1981 and 1982 years as well. *See Greater Southeast Community Hospital v. Heckler,* 602 F.Supp. 764, 766–67 (D.D.C.

1985). Thus, Greater Southeast has obtained a final and binding decision that its intermediary made an error in calculating its base year costs, i.e., the costs used to calculate the target amount component of its reimbursement under PPS. Pursuant to 42 C.F.R. § 412.72(a)(3), defendant has agreed to adjust Greater Southeast's target amount for all PPS years occurring after Judge Gesell's 1985 decision.[3] However, defendant contends that Greater Southeast can recover for damages resulting from the intermediary's error in PPS years beginning *before* that decision only if it can show that the intermediary's determination was unreasonable in light of the "data" before it.

Plaintiffs contend that the standard of review proposed by the Secretary is arbitrary and capricious and not in accordance with existing law. According to plaintiffs, "the plain wording of the Medicare statute makes absolutely clear that the correct standard is whether the intermediaries' determinations were right, not whether they were good faith judgments based on the best evidence available at the time." Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Further Support of Plaintiffs' Motion for Summary Judgment at 3. In this case, the plaintiffs have already obtained court judgments that demonstrate that their intermediaries were wrong with respect to the issues under appeal. These judgments, plaintiffs argue, entitle them to relief for the PPS years under appeal. In the alternative, plaintiffs argue that even if the Secretary's standard of review is applied, they are entitled to judgment on appeal because their intermediaries' determinations on their allowable costs were not based on the "best available data."

### III.

Before turning to consider the plaintiffs' challenge to the standard of review adopted by the defendants, it is necessary to consider briefly the claims advanced by the individual defendants. The appeals of these 12 hospitals raise four distinct issues which are discussed in turn below.

First, plaintiff Greater Southeast has challenged the Secretary's decision not to treat its intermediate care unit as a "special care unit" in determining its target amount. As noted above, a previous (and final) decision of this court determined that the hospital's unit qualifies as a special care unit. *See Greater Southeast Community Hospital v. Heckler*, 602 F.Supp. 764, 766–67 (D.D.C.1985). As a result of that decision, Greater Southeast received reimbursement for its 1982 fiscal year, the base year for its PPS target amount and "collateral" relief under § 412.72(a)(3) for PPS transition years beginning on or after January 1, 1986. However, the Secretary refused to grant relief for Greater Southeast's first and second PPS years.

Second, Beebe Hospital of Sussex County, Inc. ("Beebe") has challenged the Secretary's refusal to exclude labor/delivery room days from the inpatient count in determining its allowable base year costs. The Court of Appeals for this Circuit has issued a final decision ruling against the Secretary on the labor/delivery room day issue in an action in which Beebe was one of the plaintiffs. *See St. Mary of Nazareth Hospital Center v. Heckler*, 760 F.2d 1311 (D.C.Cir.1985); *see also St. Mary of Nazareth Hospital Center v. Schweiker*, 718 F.2d 459 (D.C.Cir.1983); *Stormont-Vail Regional Medical Center v. Bowen*, 645 F.Supp. 1182 (D.D.C.1986). On April 27, 1987, the Secretary issued a ruling (HCFAR 87–3) announcing that the Health Care Finance Administration ("HCFA") would follow the *St. Mary* decision in all claims filed in the D.C. Circuit. 52 Fed.

---

**3.** Because of inevitable delays in the processing of base year appeals, the relief provided by 42 C.F.R. § 412.72(a)(3) is likely to affect only those years of the PPS transition period when the target amount constitutes a relatively small proportion of the total PPS reimbursement rate. *See supra* at 293. In the case of Greater Southeast, for example, the Secretary has allowed the special care unit costs for the provider's third and fourth PPS years (1986 and 1987) when the target amount constitutes 45% and 25% of the PPS rate but has refused to allow these costs for the first and second PPS years (1984 and 1985) when that figure constitutes 75% and 55% of the rate.

Reg. 13873–74. On May 27, 1987, the Secretary agreed to a stipulation in *Beebe Hospital of Sussex County, Inc., et al. v. Otis R. Bowen,* No. 87–0409, resolving the labor/delivery room day issue in favor of the plaintiffs for all cost reporting years under appeal, including the "base year" of plaintiff Beebe.[4]

Eight hospitals, Georgetown University Hospital ("Georgetown"), Greater Southeast, Tucson Medical Center ("TMC"), St. Cloud Hospital ("St. Cloud"), Howard University Hospital ("Howard"), Tucson General Hospital ("TGH"), Capitol Hill Hospital ("Capitol Hill") and District of Columbia General Hospital ("D.C. General") have challenged the Secretary's application of a wage index formula that excludes federal government hospital data in determining allowable base year costs. The wage index used by the Secretary was invalidated on procedural grounds in *District of Columbia Hospital Ass'n, et al. v. Heckler, et al.,* No. 82–2520 (D.D.C. April 29, 1983) (*"DCHA"*). No appeal was taken from this ruling. However, in 1984, the Secretary reissued his wage index rule and gave this new rule retroactive effect.

The Court of Appeals for this Circuit has recently determined that the Secretary's actions in issuing a retroactive rule were precluded by both the Administrative Procedure Act and the Medicare Act. *See Georgetown University Hospital v. Bowen,* 821 F.2d 750 (D.C.Cir.1987) (*"Georgetown I"*). Thus, it is clear that the plaintiffs' fiscal intermediaries erred in using the Secretary's wage index formula to calculate plaintiffs' target amounts. Moreover, at the time the target amounts were set, *DHGA* had already been decided and the retroactive wage index rule had not yet been promulgated. Thus, as the Secretary acknowledges, these determinations were clearly wrong at the time that they were made. *See* Reply in Support of Defendant's Motion for Summary Judgment at 20.

All plaintiffs except Capitol Hill and D.C. General were plaintiffs in the *Georgetown I* case. These two plaintiffs did not participate in that action because the wage index issue had no financial impact on their base year even though it does have an impact on the target amount component of their PPS rates. With respect to Capitol Hill, its Medicare intermediary failed to apply the 1984 retroactive rule to the hospital's base year cost report although it did apply the rule in determining the target amount component of the PPS rate. As to D.C. General, the intermediary determined that its charges for its base year were below its costs, regardless of which wage index was used to determine "allowable costs." While the wage index issue therefore did not affect the reimbursement received by D.C. General for its base year, the issue is relevant to the target amount component of D.C. General's PPS rate since that amount is calculated using "allowable costs" without reference to actual charges. *See* 42 U.S.C. § 1395ww.

Finally, nine hospitals, George Washington University Hospital ("George Washington"), Georgetown, Greater Southeast, Howard, Capitol Hill, D.C. General, Beebe, the Washington Hospital Center and Kent General Hospital ("Kent") have challenged the Secretary's application of 42 C.F.R. § 405.452(b)(1)(ii) (1979) ("the Malpractice Rule") and the Secretary's refusal to apply the utilization methodology in effect before that regulation was passed in determining the allowable base year malpractice costs. All nine plaintiffs have received a favorable court judgment invalidating the Malpractice Rule and ordering payment under the utilization methodology for their base years. *See Walter O. Boswell Memorial Hospital v. Heckler,* 628 F.Supp. 1121 (D.D.C.1985). This decision was appealed by the defendant. On April 1, 1986, the defendant promulgated a malpractice rule that applies retroactively to cost reporting years beginning as early as 1979. The Court of Appeals recently declined to rule

---

**4.** Plaintiff Tucson Medical Center has also appealed on the labor/delivery room day issue. However, a Supplemental Memorandum filed by the plaintiffs on September 22, 1987 informed the Court that this claim has now been settled by the parties and will soon be dismissed.

on the defendant's suggestion that this action rendered the malpractice litigation moot, and it remanded the case to the district court to consider the validity of the promulgation and application of the 1986 rule. The case is currently pending before the District Court on remand.

## IV.

All of these plaintiffs seek to have the target amount component of their PPS rates readjusted on the basis of the court decisions described above which, according to plaintiffs, demonstrate that their intermediaries erred in determining their "allowable" costs. Defendant argues that they may prevail only if they can show that their intermediaries failed to rely on the "best data available" at the time their target amounts were set.

In *Washington Hospital Center v. Bowen*, 795 F.2d 139 (D.C.Cir.1986), the Court of Appeals recently discussed the role of the courts in reviewing the Secretary's construction of the Medicare statute. The court noted that the first task "is to determine 'whether Congress has directly spoken to the precise question in issue. If the intent of Congress is clear, that is the end of the matter.'" *Id.* at 143 (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). In determining the intent of Congress, the court must examine both the statutory language and the legislative history; no particular deference is due to the agency's own interpretation of these sources. 795 F.2d at 143–44.

■ In this case, both the words of the statute and its legislative history support the standard of review proposed by the plaintiffs. The Medicare statute defines a provider's "target amount" during the transition period as "the allowable operating costs [per discharge] of inpatient hospital services" for the base year, adjusted by an inflation factor. 42 U.S.C. § 1395ww(b)(3)(A). The plain language of the statute therefore provides that costs that are "allowable" for a hospital's base year must be included in the calculation of

that hospital's "target amount." When reviewing an intermediary's determination of the target amount, the Court must consider whether the costs in question were "allowable" in the base year. A final administrative or judicial decision (or a stipulation by the Secretary) that a particular cost was, indeed, "allowable" in the base year should provide conclusive proof that the cost should be included in the provider's "target amount" for the PPS year under appeal. The Court of Appeals for this Circuit implicitly recognized the effect of a ruling under the reasonable cost system on a provider's reimbursement during the PPS transition period when it stated, in *Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 791 n. 3 (D.C.Cir.1984), that

> Reimbursements for costs reported between October 1, 1983, and October 1, 1986, depend in part upon a hospital's costs under the "reasonable cost" system, 42 U.S.C.A. § 1395ww(a)(4), (b)(3)(A), (d)(1)(A) (1983), and thus will be affected by whether the Malpractice Rule is valid.

Similarly, the eleventh circuit assumed, in *Charter Medical Corp. v. Bowen*, 788 F.2d 728, 735 (1986), that "plaintiffs are entitled to full retroactive relief for all damages caused by erroneous prospective payment rates."

The judicial review provisions of the statute provide further evidence that Congress intended to afford "full retroactive relief" to hospitals which are injured by an intermediary's failure to include "allowable" costs in their transition period PPS rates. The Medicare statute was expressly amended to furnish hospitals with the same procedures for administrative and judicial review under PPS as under the cost reimbursement system. 42 U.S.C. § 1395oo, as amended by Pub.L. No. 98–21, § 602(h). That statute contains provisions relating to the scope of evidence and the standard of judicial review that are directly relevant here. 42 U.S.C. § 1395oo (d) provides that

> A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary, and such

other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole.

This provision conflicts directly with the Secretary's contention that the Board (and the Court) are limited solely to considering the "data" before the intermediary when acting upon a PPS appeal. In addition, 42 U.S.C. § 1395oo(f) provides that court cases involving Medicare payment matters "shall be tried pursuant to the applicable provisions under Chapter 7 of title 5" including 5 U.S.C. § 706(2)(A), which requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This statute clearly requires a court to set aside an intermediary's decision that directly conflicts with a final and binding court precedent since such a decision would not be "in accordance with law." Review under the Administrative Procedure Act ("the APA") is not limited to determining whether an agency's decision was "reasonable" in light of the law as it existed at the time of its decision; instead, the APA requires a court to determine whether a decision is "in accordance with the law" as it exists at the time of review in the absence of an explicit direction to the contrary by Congress.

The only legislative support marshalled by the Secretary in support of his proposed standard of review comes from a Conference Report accompanying the PPS legislation. That report noted that

> Since the hospital's specific portion of the rate must be determined in advance of the hospital's first fiscal year under the system, the managers expect the Secretary will use *the best data available at that time* to determine operating costs for the purposes of the phase-in.

H.R. (Conf.) Rep. No. 98–47, 98th Cong., 1st Sess. 182, *reprinted in* 1983 U.S.Code Cong. & Admin.News 472 (emphasis added). This sentence in no way conflicts with the explicit provisions providing for judicial review of target amount determinations under PPS. It is one thing for Congress to note its expectation that the Secretary will rely on the best data available in setting rates and quite another to assume that Congress thereby intended to drastically restrict the customary scope of judicial review. In fact, both the House and Senate reports accompanying the PPS legislation expressly state that the Medicare statute "would provide for the same procedures for administrative and judicial review of payments under the prospective payment system as is currently provided for cost-based payments." H.R.Rep. No. 98–25, 98th Cong., 1st Sess. 143, *reprinted in* 1983 U.S.Code Cong. & Admin.News 362; S.Rep. No. 98–23, 98th Cong., 1st Sess. 57, *reprinted in* 1983 U.S.Code Cong. & Admin.News 197.

Although the precise issue presented here does not appear to have been conclusively determined by any other court, two cases from other circuits support this court's determination that the Secretary's interpretation is inconsistent with the Medicare Act. In *St. Francis Hospital v. Heckler*, CCH Medicare and Medicaid Guide ¶ 34,918 (S.D.W.Va.1985), *reversed on jurisdictional grounds*, 802 F.2d 697 (4th Cir. 1986), the plaintiff challenged the prospective relief regulation which, under the interpretation adopted by the Secretary at that time, precluded *any* adjustment of a hospital's target amount for PPS years beginning before the date of a favorable decision on a successful base year appeal. *See id.* at 9516 n. 7. The court determined that the prospective relief rule as applied on the facts of the case, "violates all sense of fairness" and is therefore "arbitrary and capricious." *Id.* at 9517. Similar sentiments were expressed by the court in *Greenville Hospital System v. Bowen*, No. 6:85–337–3 (D.S.C. Sept. 16, 1986). The plaintiffs in that case were two hospitals that sought, and received, an adjustment to their base year costs after a reorganization that had a radical effect on the hospitals. In keeping with the agency's policy, however, the Administrator of HCFA refused to apply the adjustment to the first hospital's first PPS year, which had already begun at the time the adjustment was granted. The plaintiffs then petitioned for

review. The court noted first that the scope of review under the Act was dictated by the Administrative Procedure Act and could not be altered by agency regulations that imposed a more restrictive standard. *See* Order at 10 ("The Secretary cannot limit the scope of the Court's review by regulatory fiat."). The court then determined that the intermediary's initial calculation of the "target amount" was not based on the "best available evidence." In the alternative, the court found that the prospective relief regulation, 42 C.F.R. § 412.72(a)(3), was invalid. The Court noted that "[i]f a hospital is successful in a base year appeal, then by definition its hospital-specific rate was not calculated in accordance with law because it did not include all 'allowable operating costs.' Thus, it is arbitrary and capricious to give collateral effect for base year appeals only to future PPS years, and not to give collateral effect for the first PPS year as well." *Id.* at 16.

Unable to demonstrate any substantial support for his standard of review in the Act, in its legislative history or in the Medicare case law, the Secretary relies on a handful of cases from outside the Medicare field that, he asserts, establish a set of "traditional rate-making principles" that are directly applicable here. The court has considered the cases cited by the Secretary and has determined that they are not germane to the question before it. First, all of these cases turn on an interpretation of a distinct statutory provision. For example, in *Transcontinental & Western Air, Inc. v. Civil Aeronautics Board,* 336 U.S. 601, 69 S.Ct. 756, 93 L.Ed. 911 (1949), a case which the defendant cites for the proposition that administratively set rates may not be altered retroactively, the Supreme Court determined that the Civil Aeronautics Board lacked the authority to alter a mail rate for air carriers for a period before the initiation of new mail rate proceedings. In reaching this conclusion, the Court noted that its result "turns primarily on the meaning of § 406(a) of the Civil Aeronau-

tics Act of 1938 as amended, 52 Stat. 998, 49 U.S.C. § 486(a), . . . ." 336 U.S. at 602, 69 S.Ct. at 756. Moreover, even if the reasoning of *Transcontinental & Western Air* could be abstracted out of its statutory context and read to establish general principles of administrative law, it would not support the interpretation advanced by the Secretary. The Court in that case specifically interpreted the Civil Aeronautics Act "to make clear that the rates could be made retroactive to the date of the application [for a rate increase]." 336 U.S. at 605, 69 S.Ct. at 758. No relief would be available, however, for unreasonable rates in effect before that date. *Id.* at 604, 69 S.Ct. at 757. But here the Secretary seeks to disallow *any* retroactive increase in PPS rates (including any increase for services rendered after the providers filed their appeals from the intermediaries' decisions) unless the plaintiff can demonstrate that the rate set was not based on the "best available data" at the time it was set. Both the standard of review, and the principle of retroactivity proposed by the Secretary are directly in conflict with *Transcontinental & Western Air,* the primary authority on which he relies.

Furthermore, defendant's analogy to ratemaking proceedings fails to consider the nature of the claims advanced by the hospitals. Plaintiffs here, unlike the claimants in several of the cases cited by the defendant, are not members of a regulated industry who challenge an administratively determined rate on the ground that it rests on estimates of their future prices and costs that proved to be inaccurate. *See, e.g., East Tennessee Natural Gas Co. v. FERC,* 686 F.2d 430, 436–37 (6th Cir. 1982)[5]; *Villages of Chatham and Riverton v. FERC,* 662 F.2d 23, 29 (D.C.Cir. 1981). Instead, these petitioners challenge their intermediaries' determinations of their "target amounts" on the ground that they are inconsistent with final court judgments establishing the appropriate principles to be used in determining "allowable"

---

**5.** It should be noted that the rates approved by the Commission in that case were to be effective

retroactively. *See* 686 F.2d at 437.

costs under the Act. The decision of a federal court that a fiscal intermediary erred in administering the Medicare statute is not "data" comparable to an estimate of future costs in a utility ratemaking proceeding. It is the law. And the clear language of the statute requires that any decision that is not in accordance with that law must be set aside by the reviewing court.

### V.

Accordingly, pursuant to 42 U.S.C. § 1395ww(b)(3)(A), when considering a properly filed appeal from an intermediary's determination of a hospital's target amount, the court should determine whether the particular cost at issue was "allowable" in the plaintiff's base year. The plaintiff should be entitled to a favorable judgment on that issue for the prospective payment year under appeal if it has obtained a final favorable court or administrative judgment, or a stipulation from the defendant, that the cost was "allowable" under the cost reimbursement system for its base year. To the extent that 42 C.F.R. § 412.72(b) may be read to require the plaintiff to such a suit to demonstrate not only that the cost was "allowable" in its base year, but also that the intermediary's decision to exclude it was "unreasonable and clearly erroneous in light of the data available at the time the estimation was made," that regulation is found to be arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A).

Under the principles set forth above, plaintiff Greater Southeast is entitled to judgment for its first and second PPS years on the special care unit issue because it has received a final court judgment on that issue for its base year. Similarly, plaintiff Beebe has entered into a stipulation with the Secretary resolving the labor/delivery room day issue in its favor for its base year and is therefore entitled to have the target amount component of its PPS rate recomputed to reflect the proper Medicare apportionment of routine costs resulting from the exclusion of the labor/delivery room days from the routine inpatient costs.

With respect to the wage index formula issue, the six plaintiffs who were also plaintiffs in *Georgetown University Hospital v. Bowen*, 821 F.2d 750 (D.C.Cir.1987), are entitled to judgment on the basis of that decision. Moreover, Capitol Hill and D.C. General hospitals, who were not plaintiffs in *Georgetown I*, are also entitled to judgment in their favor. *Georgetown I* and *District of Columbia Hospital Ass'n v. Heckler*, No. 82–2520 (D.D.C. April 29, 1983) demonstrate that the costs excluded from these plaintiffs' target amounts through the use of the Secretary's wage index formula were, in fact, "allowable" for their base years.

Finally, nine hospitals seek to have the target amount component of their PPS rates recomputed under the malpractice insurance formula in effect before the promulgation of 42 C.F.R. § 405.452(b)(1)(ii) (1979). While that regulation has been invalidated, *see Walter O. Boswell Memorial Hospital v. Heckler*, 628 F.Supp. 1121 (D.D.C.1985), this court is currently considering the validity of a 1986 malpractice rule that the Secretary seeks to apply retroactively. Accordingly, the Court will retain jurisdiction to enter an order with respect to the malpractice issue after a decision has been issued in *Walter O. Boswell Memorial Hospital v. Bowen*, No. 82–0710 (D.D.C.).

### ORDER

For the reasons stated in the accompanying memorandum, it is this 16th day of November, 1987, hereby

ORDERED: that *George Washington University Hospital, et al. v. Bowen*, No. 85–3653, should be, and is hereby, consolidated with *Georgetown University Hospital, et al. v. Bowen*, No. 85–3650; and it is further

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, GRANTED with respect to the claim of plaintiff Greater Southeast Community Hospital on the special care unit issue; and it is further

ORDERED: that the Secretary shall recompute the target amount component of the prospective payment rate of plaintiff Greater Southeast Community Hospital to reflect the determination that the hospital's intermediate care unit qualifies as a special care unit and shall, within sixty days of the date of this order, pay to Greater Southeast Community Hospital the additional amount to which it is entitled for the prospective payment years under appeal in this suit as a result of such recomputation, plus interest (computed to the date of payment) in accordance with 42 U.S.C. § 1395oo (f)(2); and it is further

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, GRANTED with respect to the claims of plaintiff Beebe Hospital of Sussex County, Inc. on the labor/delivery room day issue; and it is further

ORDERED: that the Secretary shall recompute the target amount component of the prospective payment rates of plaintiff Beebe Hospital of Sussex County, Inc. to reflect the proper Medicare apportionment of routine costs resulting from the exclusion of labor/delivery room days from the routine inpatient count and shall, within sixty days of the date of this order, pay to plaintiff Beebe Hospital of Sussex County, Inc. the additional amounts to which it is entitled for the prospective payment years under appeal in this suit as a result of such recomputation, plus interest (computed to the date of payment) in accordance with 42 U.S.C. § 1395oo (f)(2); and it is further

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, granted with respect to the claims of plaintiffs Georgetown University Hospital, Greater Southeast Community Hospital, Tucson Medical Center, St. Cloud Hospital, Howard University Hospital, Tucson Hospital Liquidating Corporation, Capitol Hill Hospital and District of Columbia General Hospital on the wage index issue and it is further

ORDERED: that the Secretary shall recompute the target amount component of the prospective payment rate of plaintiffs Georgetown University Hospital, Greater Southeast Community Hospital, Tucson Medical Center, St. Cloud Hospital, Howard University Hospital, Tucson Hospital Liquidating Corporation, Capitol Hill Hospital and District of Columbia General Hospital to reflect the proper amount of Medicare reimbursement resulting from the application of the wage index formula which includes federal government hospital wage data, and shall, within sixty days of the date of this order, pay to the plaintiff hospitals the additional amounts to which they are entitled for the prospective payment years under appeal in this suit as a result of such recomputation, plus interest (computed to the day of payment) in accordance with 42 U.S.C. § 1395oo (f)(2); and it is further

ORDERED: that, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds no just reason for delay in entering judgment on the foregoing matters and expressly directs entry of judgment with respect to these matters; and it is further

ORDERED: that the Court will retain jurisdiction to enter a final order with respect to the malpractice issue after a declaration has been issued in *Walter O. Boswell Hospital v. Bowen*, No. 82–0710 (D.D. C.).