**GEORGETOWN UNIVERSITY HOSPITAL, et al.**

v.

**Louis W. SULLIVAN, Secretary, Department of Health and Human Services, Appellant.**

**GEORGE WASHINGTON UNIVERSITY HOSPITAL, et al.**

v.

**Louis W. SULLIVAN, Secretary, Department of Health and Human Services, Appellant.**

**Nos. 90–5032, 90–5033.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1991.

Decided June 7, 1991.

Marcus H. Christ, Attorney, Dept. of Health and Human Services, with whom, Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Michael J. Astrue, General Counsel, Darrel J. Grinstead, Associate General Counsel and Henry R. Goldberg, Deputy Chief Counsel, Dept. of Health and Human Services, were on the brief for appellant in Nos. 90–5032 and 90–5033. Anthony J. Steinmeyer and Edward R. Cohen, Attorneys, Dept. of Justice, Washington, D.C., also entered an appearance for appellant.

Ronald N. Sutter, Washington, D.C., for appellees in Nos. 90–5032 and 90–5033.

Before: MIKVA, Chief Judge, WALD and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

A hospital that provides services to Medicare patients is entitled to reimbursement under the Social Security Act ("Act"), 42 U.S.C. § 1395, *et seq.* Underlying this case is a dispute between Georgetown University Hospital, along with several other hospitals in the District of Columbia ("Hospitals"), and the Secretary of Health and Human Services ("Secretary") regarding the Hospitals' entitlement to reimbursement for inpatient services under the Medicare Prospective Payment System ("PPS"). If a hospital disagrees with the Secretary's determination about the "amount of payment" due under PPS, the hospital may appeal first to the Provider Reimbursement Review Board ("Board" or "PRRB") and then to federal district court. 42 U.S.C. §§ 1395*oo* (a), (f). In an earlier phase of this litigation, we affirmed a district court opinion holding that the Secretary miscalculated the amount of payment due the Hospitals and ordering the Secretary to recompute the Hospitals' PPS notice, to make the payments that had been wrongfully withheld, and to pay interest as required by the Act. *See Georgetown University Hospital v. Bowen,* 862 F.2d 323 (D.C.Cir.1988), *aff'g* 698 F.Supp. 290 (D.D.C.1987).

The current dispute involves the amount of interest that the Secretary owes the Hospitals on their underlying claims. The Act provides that when a hospital seeks judicial review, "the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180–day period [that is triggered by notice of the PPS rate notice] ... to be awarded by the reviewing court in favor of the prevailing party." *Id.* § 1395*oo* (f)(2). The specific question in this case is: what is the "amount in controversy" on which interest accrues? Adopting the Hospitals' arguments, the district court held that the "amount in controver-

sy" is "the entire amount of disputed payments that the Secretary will withhold throughout the [hospital's fiscal] year, whether or not those payments have yet been withheld." *Georgetown University Hospital v. Sullivan,* Civ. Action No. 85–3650, Memorandum Opinion ("Mem. op.") at 3, 1989 WL 160627 (D.D.C. Nov. 7, 1989). The Secretary disagrees, arguing that "at any particular time after the 180–day period, plaintiffs are entitled only to interest on the amount of disputed payments that have been withheld up to that time." *Id.* Because we find that the Secretary's interpretation is the more reasonable interpretation of the ambiguous statutory language, we reverse.

## I. BACKGROUND

When Congress amended the Act in 1974 to allow interest on the "amount in controversy," Medicare providers were reimbursed on a "reasonable cost" basis. 42 U.S.C. § 1395f(b) (1983). At the end of the fiscal year, the provider filed with its fiscal intermediary a report representing the total costs for which the provider sought Medicare reimbursement. The fiscal intermediary then audited the report and issued a Notice of Program Reimbursement ("NPR"), detailing the allowable costs for which Medicare would reimburse the provider. If the provider was dissatisfied with the NPR, it could appeal to the PRRB and then to federal district court. *Id.* §§ 1395oo (a), (f)(1). If the provider prevailed in court, it was entitled to interest on the "amount in controversy," with the interest calculated from 180 days after the issuance of the NPR. *Id.* § 1395oo (f)(2).

In 1983, however, Congress partially replaced the cost-based reimbursement system with the PPS system.[1] Under this system, providers are reimbursed based on prospectively determined rates that vary according to the type of treatment rendered. 42 U.S.C. § 1395ww(d) (1991 Supp.). Before the beginning of its fiscal year, each hospital receives a PPS rate notice stating the amount of payment it will receive for each patient served during the year. In *Washington Hospital Center v. Bowen,* 795 F.2d 139 (D.C.Cir.1986), this court held that the PPS rate notice is a "final intermediary determination" subject to appeal under 42 U.S.C. § 1395oo (a). Thus, a hospital may appeal the rates in the PPS rate notice as soon as the hospital receives the rate notice. But while the appeal is pending, the hospital continues to provide services and receive reimbursements from HHS at the rates set forth in the challenged notice. If the hospital eventually prevails on appeal, the Secretary must pay the difference between the reimbursement paid for each patient served while the inaccurate rate notice was in effect and the amount that would have been paid if the rate notice had been correct in the first instance.

If the hospital prevails, it is also entitled to interest under the litigation interest provision of the Act, 42 U.S.C. § 1395oo (f)(2). That section provides that when a provider seeks judicial review, "the amount in controversy shall be subject to annual interest beginning on the first day of the first month beginning after the 180–day period [that is triggered by notice of the PPS rate notice] ... to be awarded by the reviewing court in favor of the prevailing party." 42 U.S.C. § 1395oo (f)(2) (1983). Because the Hospitals receive the PPS rate notice just before the beginning of the fiscal year, both parties agree that interest generally begins to accrue in the middle of the fiscal year. The parties disagree, however, about the "amount in controversy" on which interest accrues. The Hospitals contend that it is the difference between the amount originally determined by the Secretary to be payable to the provider under PPS and the amount eventually determined by the court to be payable for the *entire fiscal year.* In other words, the amount in controversy is the amount that the Secretary wrongly withheld for all patients served

---

**1.** The cost-based system remains in effect for some costs, such as capital-related costs, and for some hospitals, including children's and psychiatric hospitals. *See* 42 U.S.C. §§ 1395ww(a)(4), (d)(1). The interest dispute in this case, however, concerns only the PPS system.

during the fiscal year.[2] The Secretary, on the other hand, views the "amount in controversy" as a fluctuating amount that increases as the year progresses and the Hospitals provide more services without receiving "full" payment. Thus the Secretary contends that at any particular time after the 180–day period has run, the Hospitals are entitled only to interest on the amount of disputed payments that have been withheld up to that time.

The district court ruled in the Hospitals' favor, finding that the plain language of the statute compels the conclusion that "there is one, and only one amount in controversy": the "amount in controversy as of the end of the [fiscal] year." *Georgetown University Hospital,* Mem. op. at 3–4. The Secretary appeals.

## II. ANALYSIS

The Hospitals contend that the language of the litigation interest provision is clear and unambiguous: the "amount in controversy" is the amount that the Secretary wrongfully withheld for the entire fiscal year covered by the inaccurate PPS rate notice. We disagree. Although we recognize that the Hospitals set forth a reasonable interpretation of the "amount in controversy" language, for the reasons discussed below, we do not believe it is the only one. Furthermore, the Hospitals' in-

terpretation creates an odd result not contemplated by Congress: the Secretary will have to pay interest on Medicare payments that he wrongfully withholds even before he wrongfully withholds them. Because there is no indication that Congress intended to waive the government's sovereign immunity to pay interest on principal before the principal is due, we decline to adopt the Hospitals' interpretation. Instead, we agree with the Secretary that the more reasonable interpretation of the litigation interest provision is that at any time after interest begins to accrue, the "amount in controversy" is the amount of disputed payments that the Secretary has withheld up to that point.[3]

The Hospitals argue, first, that the district court correctly concluded that "[t]he combination of the definite article 'the' with the singular 'amount' implies that there is one, and only one, amount in controversy." *Georgetown,* Mem. op. at 4. Therefore, they continue, the Secretary's assertion that the "amount in controversy" increases as the fiscal year progresses and the Hospitals provide more services without receiving full payment is inconsistent with the plain language of the statute. We are not persuaded. As the Secretary points out, 1 U.S.C. § 1 states that "[i]n determining the meaning of any Act of Congress, unless the context indicates oth-

**2.** Because the Hospitals may appeal the PPS rate notice as soon as they receive it, it is theoretically possible that the district court could rule in the Hospitals' favor before the end of the fiscal year covered by the challenged rate notice. If that were to occur, the Secretary would have to recompute the PPS rate notice and begin reimbursing the Hospitals at the revised rates. The Secretary would also have to reimburse the Hospitals for the amount of underpayment under the inaccurate rate notice. Thus, if the notice were corrected before the end of the year, the "amount in controversy" would, in the Hospitals' view, be the amount that the Secretary wrongfully withheld in the months while the inaccurate notice was in effect. But because of the delays inherent in judicial review, the district court usually will not render a decision until after the end of the fiscal year covered by the disputed rate notice. In reality, therefore, the Secretary will reimburse the Hospitals under the disputed rate notice for the entire fiscal year, and, under the Hospitals' interpretation, the "amount in controversy" will be the amount

that the Secretary wrongfully withheld for the entire fiscal year.

**3.** Although we find that the Secretary's interpretation of the litigation interest provision is the more reasonable one, we do not give his position *Chevron* deference. The Secretary conceded at oral argument that *Chevron* deference is inapplicable because he has never issued a ruling, regulation, or policy statement explaining his interpretation. *Cf. Bowen v. Georgetown University Hospital,* 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988) (explaining that the Court has never accorded deference "to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice"); *St. Agnes Hospital v. Sullivan,* 905 F.2d 1563, 1568 (D.C.Cir.1990) (declining to defer to Secretary's interpretation of the litigation interest provision of the Act because "the Secretary has never issued any regulation, ruling or policy statement indicating the ... construction now urged upon the Court").

erwise—words importing the singular include and apply to several persons, parties, and things." Consequently, the use of the singular noun does not preclude the possibility that there may be more than one amount that will be subject to interest.

Recognizing this, the Hospitals respond that 1 U.S.C. § 1 is inapplicable because the context of the litigation interest provision at issue indicates that there is only one amount in controversy.[4]  In their view, the words "the amount in controversy" in the interest calculation section have the same meaning that they have in the jurisdictional section of the SSA.[5]  In both sections, they argue, the words mean "the amount of underpayment for the entire fiscal year in which the disputed PPS rate applies."[6]  Although it is true that this court in *Washington Hospital*, 795 F.2d at 143 n. 4, implicitly interpreted the jurisdictional requirement for individual appeals as the Hospitals suggest, that case does not compel us to adopt the Hospitals' interpretation of the interest provision.

The presumption that "identical words used in different parts of the same act are intended to have the same meaning ... is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932). As the Secretary points out, the "amount in controversy" language serves a very different purpose in the jurisdictional section of the Act than it does in the interest section. In the former it fulfills the congressional determination that judicial review is warranted only where there is a significant amount of money at stake; in the latter, it fulfills the congressional determination that there should be some compensation for the delay inherent in judicial

4. The Hospitals also argue that 1 U.S.C. § 1 is inapplicable because Congress employed the definite article "the," rather than the indefinite article "an," to modify the words "amount in controversy." In their view, the court should not construe a single noun to include the plural if the noun is preceded by the definite article "the." We reject this argument because it is overly formalistic and inconsistent with Supreme Court case law. *See, e.g., Barr v. United States*, 324 U.S. 83, 90–92, 65 S.Ct. 522, 525–526, 89 L.Ed. 765 (1945) (holding that "the buying rate" for foreign currency under the Tariff Act of 1930, 31 U.S.C. § 372, included more than one buying rate).

5. The jurisdictional provision of the Act states in relevant part:

> (a) Any provider of services which has filed a required cost report ... may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... and ... any hospital which receives payments in amounts computed under [PPS] ... may obtain a hearing with respect to such payment by the Board if—
> (1) such provider—
> (A)(i) [is reimbursed under the cost-based system and] is dissatisfied with a final determination of ... its fiscal intermediary ..., or
> (ii) is dissatisfied with a final determination of the Secretary as to the amount of the payment under [PPS] ...
> (2) the amount in controversy is $10,000 or more, and

> (3) such provider files a request for a hearing within 180 days....
> (b) The provisions of subsection (a) of this section shall apply to any group of providers of services if ... the matters in controversy involve a common question of fact or interpretation of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more.

42 U.S.C. § 1395*oo* (a), (b) (1983). Subsection (f) gives providers the right to appeal PRRB decisions to district court. *Id.* § 1395*oo* (f)(1) (1991 Supp.).

6. The Hospitals implicitly admit, however, that the "amount in controversy" for purposes of determining jurisdiction is not exactly the same as the "amount in controversy" for purposes of calculating interest. Because the Hospitals may appeal the PPS notice before the end of the fiscal year, they cannot know, at the time they file their appeals, the actual amount that the Secretary will wrongfully withhold for the entire fiscal year. The Hospitals can satisfy the jurisdictional requirement, however, by making a good faith claim that the amount actually due at the end of the fiscal year will be at least $10,000. *See Washington Hospital* at 143 n. 4. The Hospitals therefore recognize that the jurisdictional "amount in controversy" is an *estimate* of the amount that will be due at the end of the fiscal year. Yet the Hospitals argue that the "amount in controversy" on which interest accrues is the *actual* amount that the court ultimately finds that the Secretary wrongfully withheld during the fiscal year.

review. Consequently, the statutory language does not compel the conclusion that Congress obviously meant the "amount in controversy" language to be interpreted the same way in the jurisdictional and interest sections of the Act.[7] *Cf. Natural Resources Defense Council, Inc. v. Environmental Protection Agency,* 673 F.2d 400, 403 n. 10 (D.C.Cir.) (the words "effluent limitation or other limitation" may have a different meaning in the section of the Clean Water Act dealing with judicial review of the Administrator's action than they do in the section dealing with citizen suits because of the "very different purposes served" by the two sections), *cert. denied,* 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 143 (1982); *McCord v. Bailey,* 636 F.2d 606, 617 n. 15 (D.C.Cir.1980) (although the words "any State or Territory" do not include the District of Columbia for purposes of defining whose officials will have liability under 42 U.S.C. § 1983, they do include the District of Columbia for purposes of defining what conspiracies will be covered by 42 U.S.C. § 1985(2)), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).

Furthermore, we are unwilling to adopt the Hospitals' interpretation of the "amount in controversy" language in the interest provision because it leads to an odd result not contemplated by Congress: interest accrues on principal *before* the principal is due. An example illustrates why this is true. Assume that a hospital receives a PPS rate notice in December describing the per-patient reimbursement schedule for various services that the hospital will provide during the fiscal year beginning January 1. Assume further that because the Secretary miscalculated the rates contained in the rate notice, the hospital will provide $10,000 worth of services each month but receive only $9,000 reimbursement from Medicare. If the hospital successfully appeals the rate notice, interest begins to accrue on July 1. *See* 42 U.S.C. § 1395oo (f)(2). On that date, the Secretary will owe the hospital $6,000. Of course, if the hospital continues to provide services in the second half of the year as it did in the first half, the Secretary will owe the hospital an additional $1,000 each month, for a total of $12,000 at the end of the fiscal year.

Although in this example, the Secretary owes the hospital only $6,000 on July 1, the Hospitals contend that, beginning July 1, he must pay interest on the $12,000 that he will owe at the end of the fiscal year. This example illustrates, therefore, that acceptance of the Hospitals' argument would result in the Secretary having to pay interest on principal that is not yet due: he would have to pay interest on Medicare reimbursements that he wrongfully withholds before he wrongfully withholds them and, in fact, even before the hospital has earned them. Thus, the Hospitals' interpretation is inconsistent with the universally accepted business practice of calculating interest on outstanding principal. We agree with

**7.** In fact, contrary to the Hospitals' assertion, courts have not always interpreted the "amount in controversy" language in the litigation interest provision to mean "the amount in controversy for the fiscal year covered by the contested NPR or PPS rate notice." In *Cleveland Memorial Hospital, Inc. v. Califano,* 594 F.2d 993, 995–96 (4th Cir.1979), the Fourth Circuit reversed the PRRB and held that hospitals could aggregate claims disallowed by the NPRs from several different fiscal years to meet the $50,000 amount in controversy requirement for group appeals. In that case, the PRRB had reasoned that because the "amount in controversy" under § 1395oo (a) for individual appeals was determined by the provider's claim for a single year, the "amount in controversy" for group appeals under § 1395oo (b) must also be determined by the claims for a single year. *Id.* at 995. While not deciding whether the PRRB correctly interpreted the jurisdictional provision for individual appeals, the court concluded that the statutory language and legislative history of the group appeals provision supported its holding that "*all* claims which are properly joined in a group appeal ... may be aggregated to meet the jurisdictional amount in controversy," without regard to the cost year in which the claims arose. *Id.* at 996 (emphasis in original); *see also White Memorial Medical Center v. Schweiker,* 640 F.2d 1126 (9th Cir.1981) (same). Under existing case law, therefore, the words "the amount in controversy" may mean different things for determining the jurisdictional amount for individual and group appeals. Similarly, the words could have a different meaning for calculating litigation interest.

the Secretary that this is an odd result,[8] and we decline to sanction it because there is no indication that it is what Congress intended. Cf. Public Citizen v. Department of Justice, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (declining to adopt a literal interpretation of a statute that would compel an "odd result" when there was no other evidence that Congress intended that result).

When Congress enacted the interest provision in 1974, hospitals were reimbursed for in-patient services under the cost-based system. Under this system, the "final determination" of the amount of reimbursement due the provider is the NPR, 42 U.S.C. § 1395oo (a)(1)(A)(i) (1983), which is not issued until after the close of the fiscal year, i.e., after the provider has rendered the services and the payment for those services is due. Because interest begins to accrue 180 days after the issuance of the NPR, id. § 1395oo (f)(2), interest only accrues on outstanding payments for services that the provider has already rendered. Thus, as initially enacted, the interest provision comported with accepted business practice: interest only accrues on payments that are due, but that the Secretary has not paid.

When Congress adopted the PPS system, it did not amend the interest provision. The Hospitals contend that because the Secretary had previously interpreted the "amount in controversy" language to mean "the amount in controversy for the entire fiscal year" for cost-based system appeals,

the failure to modify the interest provision indicates that Congress intended the phrase to have the same meaning for PPS appeals, even though this significantly increases the amount of interest the Secretary must pay when he wrongfully withholds Medicare payments. We are not persuaded. The Supreme Court has warned that "[i]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." Girouard v. United States, 328 U.S. 61, 69, 66 S.Ct. 826, 829, 90 L.Ed. 1084 (1946); see also Chisholm v. FCC, 538 F.2d 349, 361–65 (D.C.Cir.), cert. denied, 429 U.S. 890, 97 S.Ct. 247, 50 L.Ed.2d 173 (1976). Our review of the legislative history leaves us with the distinct impression that Congress did not even contemplate, much less intend, that the PPS amendments would authorize the payment of interest on wrongfully withheld Medicare payments before those payments are due.[9] Unlike the Hospitals, therefore, we are unable to conclude that Congress' failure to amend the litigation interest provision indicates a congressional intent to award interest on Medicare payments that the Secretary wrongfully withholds even before he wrongfully withholds them.

Moreover, in the absence of any indication that Congress intended the waiver of sovereign immunity embodied in the litigation interest provision to be so broadly construed, we are unwilling to adopt the Hospitals' interpretation of the ambiguous "amount in controversy" language. Cf.

8. We are not persuaded by the Hospitals' argument that this is not an odd result because it compensates them "for the unfairness of allowing the Secretary to hold their monies interest-free for the first six months of the year." The Hospitals do not explain why Congress would decide to defer interest for six months and then have it accrue on payments for services that have not yet been rendered if the intent were to compensate the Hospitals fully for the delay in payment. In addition, the Secretary points out that providers seeking reimbursement under the cost-based system are not fully compensated for the delay in payment. In fact, because interest begins to accrue 180 days after the issuance of the NPR and the NPR is generally issued one year after the close of the fiscal year, interest does not begin to accrue in cost-based system appeals for approximately one and one-half years after all of the services have been ren-

dered and full payment is due. The Hospitals do not explain why Congress would fully compensate for the delay in payment under the PPS system, but not under the cost-based system.

9. Nor is there any inherent difference in the nature of the Secretary's obligation to reimburse the Hospitals under the PPS system that would suggest that interest should accrue on principal before it becomes due under the PPS system, but not under the cost-based system. As we explained in Washington Hospital, PPS is "a prospective payment system, not a prepayment system.... The primary difference between cost reimbursement and prospective payment ... is the manner in which payments are computed, not [the manner in which they are] distributed." 795 F.2d at 142 n. 2 (emphasis in original).

*McMahon v. United States*, 342 U.S. 25, 26, 72 S.Ct. 17, 18, 96 L.Ed. 26 (1951) ("statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign"); *see also Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) (same). Instead, we agree with the Secretary that the language should be construed in favor of the government and in a way that makes the accrual of interest on disputed Medicare payments in PPS appeals consistent with established business practice and with the accrual of interest in appeals under the cost-based Medicare reimbursement system.

### III.   CONCLUSION

For the reasons discussed above, we hold that when a provider successfully chal- lenges a PPS rate notice, the "amount in controversy" on which interest accrues is, at any particular time, the amount of disputed payments that the Secretary has wrongfully withheld up to that time. We therefore reverse the contrary district court holding and remand for proceedings consistent with this opinion.

*It is so ordered.*